**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES ROBERT WEST, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **2:08-CV-82-MEF** |
| **CAPTAIN SCONYERS, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## <u>RESPONSE TO ORDER TO SHOW CAUSE</u>

COME NOW Defendants Kenneth Sconyers, Shawn Logan, Gerald Wright, Matthew Campbell, Joel Tew, Larry Peavey and Dexter Baldwin, by and through the undersigned counsel, and respectfully respond to the Court's April 14, 2008, Order to Show Cause (Doc. 25) as follows:

1.      Undersigned counsel's office received the Court's February 28, 2008, Order (Doc. 17) instructing these defendants to file a Special Report in this matter. The defendants' deadline to file their Special Report was entered in to the undersigned's computer calendaring system, however, due to an apparent glitch in the computer system at the Office of the Attorney General, the deadline was either not transferred to the undersigned or was somehow deleted. Other employees at the Attorney General's Office had similar items somehow disappear from their computer calendars during this time period.

2.      It was not until after the Court's deadline had expired and this Court's April 14, 2008, Order to Show Cause was entered that this oversight came to the attention of the undersigned.

3.      Once the oversight was realized, undersigned counsel took immediate steps to prepare the Special Report requested in the Court's February 28, 2008, Order.

4.      Plaintiff has not been prejudiced by the inadvertent oversight and resulting delay.

## SPECIAL REPORT

COME NOW the Defendants, Kenneth Sconyers, Shawn Logan, Gerald Wright, Matthew Campbell, Joel Tew, Larry Peavy and Dexter Baldwin, by and through undersigned counsel, and in accordance with this Honorable Court's June 23, 2004 Order, offer the following written report.

## PARTIES

1.  The Plaintiff, James West, is an inmate of the Alabama Prison System.

2.  Defendant Kenneth Sconyers is a Correctional Captain for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

3.  Defendant Shawn Logan is a Correctional Sergeant for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

4.  Defendant Gerald Wright is a Correctional Sergeant for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

5.  Defendant Matthew Campbell is a Correctional Officer for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

6.  Defendant Joel Tew is a Correctional Officer for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

7.  Defendant Larry Peavy is a Correctional Sergeant for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

8.  Defendant Dexter Baldwin is a Correctional Officer for the Alabama Department of Corrections and is currently assigned to Easterling Correctional Facility in Clio, Alabama.

## **EXHIBITS**

EXHIBIT 1 – Affidavit of Kenneth Sconyers

EXHIBIT 2 – Affidavit of Shawn Logan

EXHIBIT 3 – Affidavit of Gerald Wright

EXHIBIT 4 – Affidavit of Matthew Campbell

EXHIBIT 5 – Affidavit of Joel Tew

EXHIBIT 6 – Affidavit of Larry Peavy

EXHIBIT 7 – Affidavit of Dexter Baldwin

EXHIBIT 8 – Affidavit of Sherry Seals with exhibits

## PLAINTIFF'S CLAIMS

Plaintiff claims that he was subjected to cruel and unusual punishment, unnecessary infliction of pain and excessive force after admittedly refusing to obey a direct order from prison officials.

## DEFENDANTS' RESPONSE

1.     The Defendants deny that they violated the Plaintiff's constitutional rights.

2.     The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.     The Plaintiff has failed to state a claim upon which relief may be granted.

4.     The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.     The Defendants are immune from suit due to qualified immunity.

## STATEMENT OF FACTS

On January 18, 2008, Plaintiff was instructed by Sgt. Shawn Logan, Segregation unit Commander, to allow him to be handcuffed as Plaintiff was scheduled to be released from his single cell in the Segregation unit. Exhibits 1, 2. It is undisputed that Plaintiff refused to comply with this direct order. Complaint; Exhibits 1, 2.  Plaintiff exclaimed, "Y'all are gonna have to come in here and get me!"  Exhibits 2, 4.  Captain Sconyers entered the unit to talk with Plaintiff, ordered Plaintiff to comply with being handcuffed, and it is similarly undisputed that Plaintiff again refused to comply with this direct order. Complaint; Exhibits 1, 2.  Captain Sconyers attempted to reason with Plaintiff in an effort to get him to comply with the direct order and advised Plaintiff that he would have to be

physically escorted to his assigned dorm if he continued to refuse to cooperate and follow the order to be cuffed. Exhibits 1, 2. Plaintiff backed up to the rear of his cell, assumed a defensive posture and stated that he would fight anyone who tried to enter his cell. Exhibits 1, 2.

Captain Sconyers advised Warden Louis Boyd of the situation and was authorized to perform a cell extraction if necessary. Exhibits 1, 2. Captain Sconyers then instructed Sgt. Logan to have his Segregation unit Rovers dress in protective gear and prepare for a possible cell extraction. Exhibit 1. Sgt. Logan, Sgt. Gerald Wright, Sgt. Larry Peavy, Officer Joel Tew, Officer Dexter Baldwin, Officer Matthew Campbell and Captain Sconyers approached Plaintiff's cell. Exhibits 1, 2, 3, 4, 5, 6, 7. Sgt. Wright repeated the orders to Plaintiff. Plaintiff steadfastly refused to comply, clenched his fists and threatened to harm anyone who entered the cell. Exhibit 1.

Captain Sconyers ordered the cell extraction. Sgt. Wright opened the door to the cell and the cell extraction team entered the cell. Exhibits 1, 2, 3. Officer Campbell pushed Plaintiff against the rear wall of the cell with an Electronic Stun Shield. Exhibits 2, 3, 4. Plaintiff resisted and attempted to keep from being restrained, falling to the bed with Officer Campbell. Exhibits 1, 2, 3, 4, 5, 6. Sgt. Peavy and Officer Baldwin entered the cell to place leg irons on Plaintiff. Exhibits 1, 2, 6, 7. Sgt. Logan again ordered Plaintiff to put his hands behind his back to be cuffed and Plaintiff again refused and struggled to break free of the officers. Exhibits 1, 2. Plaintiff attempted to hold his hands beneath his chest as Sgt. Logan and Officer Tew attempted to handcuff him. Exhibits 1, 2. Because it was apparent that Plaintiff could bite Officer Tew as Officer Tew attempted to relocate Plaintiff's hands, Captain Sconyers entered the room and held Plaintiff's head

away from officer Tew's hands. Exhibits 1, 2.  Sgt. Logan continued to order Plaintiff to stop resisting and Plaintiff continued to disobey.  Exhibit 2.

Officer Tew instructed Plaintiff to place his hands behind his back and Plaintiff refused and continued to struggle.  Exhibit 2, 5.  Sgt. Logan struck Plaintiff on the back, ordering Plaintiff to place his hands behind his back.  Plaintiff refused and began to struggle more aggressively.  Exhibit 2.  Sgt. Logan once again struck Plaintiff's lower back ordering Plaintiff to place his hands behind his back.  Plaintiff again refused. Exhibit 2.  Officer Tew and Officer Campbell were finally able to get Plaintiff's hands behind his back and cuff Plaintiff. Exhibits 1, 2.  All force ceased once Plaintiff was restrained. Exhibits 1, 2, 3, 4, 5.  Plaintiff was then removed from his cell and escorted to the health care unit (HCU). Exhibits 1, 2, 3, 4, 5.

All force used was reasonable and necessary under the circumstances. Plaintiff not only admittedly refused to obey several direct orders to be handcuffed, but he also threatened to harm anyone who attempted to enter his cell and physically resisted being removed.  At no time during the extraction did Plaintiff lose consciousness, or was he beaten.  Plaintiff walked to the HCU under escort following the extraction and was temporarily housed there for observation. Exhibits 1, 2, 3, 4. 5, 6, 7.

## ARGUMENT

The Defendants are nonetheless entitled to summary judgment.  To survive a properly supported motion for summary judgment, the Plaintiff must produce some evidence supporting his constitutional claim. *See Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). He must "go beyond the pleadings and ⋯ designate 'specific facts showing that there is a genuine issue for trial." ' *Id.* at 324. A

plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout,* 65 F.3d 912 (11 Cir.1995); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11 Cir.1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.,* 814 F.2d 607 (11 Cir.1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex,* 477 U.S. at 322; *Everett v. Napper,* 833 F.2d 1507, 1510 (11 Cir.1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford,* 906 F.2d 667, 670 (11 Cir.1990).

Plaintiff's claims against these Defendants in their official capacities must fail because they are entitled to immunity pursuant to the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). These Defendants

were acting within the scope of their official duties in this instance on behalf of the State of Alabama. Therefore, Plaintiff brings suit against the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. These defendants in their official capacity are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, Ala. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state). All claims against the Defendants in their official capacity are due to be dismissed.

Plaintiff's claims against the Defendants in their individual capacity fail based on qualified immunity, which "protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). Monitoring, disciplining and restraining violent inmates are dangerous undertakings that require the use of discretion. Therefore, Plaintiff must allege a valid violation of his constitutional rights, and show that the Defendant knew that his actions violated clearly established law.

It is undisputed that Plaintiff continually refused to comply with direct orders from prison officials, threatened them with physical harm, and struggled against being restrained. Regardless, Plaintiff's allegations of cruel and unusual punishment, even if proven, show nothing more than *de minimis* injury. See, Body Chart, attached to Exhibit 8. The Plaintiff has failed to prove any act or injury that rises to a constitutional

violation of his rights as a prisoner. The Defendants are therefore entitled to qualified immunity.

Claims of excessive force against inmates are governed by the Eighth Amendment's proscription of cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth Amendment claim of excessive force, the Plaintiff must prove that "'force was applied … maliciously and sadistically for the very purpose of causing harm.'" *Id., quoting Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.E.2d 251 (1986). The "core judicial inquiry" in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed. 2d 156 (1992).

In addition to defining the mental state required, *Hudson* and *Whitley* outline five distinct factors relevant to ascertaining whether force was used "maliciously and sadistically for the very purpose of causing harm": (1) "the extent of the injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell*, 169 F. 3d at 1375; citing *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7.

Applying these five factors to the incident involving Plaintiff and the Defendants, it is clear that the Defendants did not use excessive force against Plaintiff. There was clearly a need for the application of some force when Plaintiff steadfastly refused to obey the direct orders of prison officials and continually struggled against restraint. The

Defendants were required to apply force to maintain discipline and divert any further harm to themselves or Plaintiff.    The Defendants used only that amount of force necessary to subdue Plaintiff, cuff Plaintiff, and restore discipline, thus preventing the likelihood of further harm.

Plaintiff was given a physical examination following the incident, and the medical findings were consistent with the officers' report of the facts.    These facts demonstrate that the Defendants did not use excessive force against Plaintiff.    His claims are, therefore, due to be dismissed.

To state a valid excessive force claim, an inmate's injuries need not be significant, but must be more than *de minimis*.  *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.); modified in part by *Harris v. Garner*, 216 F. 3d 970 (2000).  Plaintiff can demonstrate no injury upon which he can base a valid excessive force claim.

The Eleventh Circuit follows a two part test to determine whether a Plaintiff has established a valid excessive force claim. *Lanier v. Fralic*, No. Civ.A.98-0923AHL, 2000 WL 1844679 *4 (11th Cir. 2000). The test has an objective and subjective component. *Id*. Plaintiff's excessive force claim cannot be maintained unless he establishes:

1.    That he suffered injury that was objectively harmful

enough to establish a constitutional violation, and

2.    That subjectively, defendant acted maliciously or

sadistically to cause the plaintiff harm.

The Eleventh Circuit has observed that injuries resulting from similar usage of force alleged by Plaintiff are too minor to support the objective prong of the excessive force test. *Lanier* at *5 n.5. (citing as *de minimis* injuries: *Markiewicz v. Washington*,

1999 WL 196596 (7th Cir.1999) (a bruised shoulder from being shoved into a wall); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997) (a sore, bruised ear lasting three days); *Williams v. Dehay*, 1996 WL 128422 (4th Cir.1996) (transitory back and shoulder aches of limited duration); *Schoka v. Swinney*, 1995 WL 251126 (9th Cir.1995) (a 1.5 inch scratch on the back of the hand from handcuffs); *Riley v. Dotson*, 115 F.3d 1159 (4th Cir.1997) (a welt from a slap on the face); *Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir.1994) (daily headaches without treatment from being hit with a water bucket); *Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994) (A sore and swollen thumb from being hit with keys)). See also *Santiago v. Semenza*, 965 F. Supp. 468, 472 (S.D.N.Y. 1997) (holding that an officer's striking an insubordinate prisoner in the face causing bruising was not excessive force). Plaintiff's allegations of injuries are *de minimis*, and his excessive force claim fails and the Defendants are entitled to summary judgment.

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.  WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

**/s/Benjamin H. Albritton**
Benjamin H. Albritton (ASB-0993-R67B)
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 – fax

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 23rd day of April, 2008, served a copy of the

foregoing upon the Plaintiff by placing same in the United States Mail, postage prepaid

and properly addressed as follows:

James West, 110315
Easterling Correctional Facility
200 Wallace Drive
Clio, AL  36017

/s/Benjamin H. Albritton
Benjamin H. Albritton
Assistant Attorney General

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. WEST, #110315          )
    Plaintiff,                )
                              )
VS.                            )
                              )          CASE NO. 2:08-CV-82-MEF
                              )
KENNETH SCONYERS, et al.,       )
    Defendant (s)             )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Kenneth Sconyers, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Kenneth Sconyers, and I am presently employed as Correctional Captain, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On January 18, 2008, Inmate James West, #110315, was instructed by Sgt. Shawn Logan, Segregation Unit Commander, to allow himself to be handcuffed. Inmate West was to be released from his single cell in the Segregation Unit and assigned to Dorm C-1. Sgt. Logan advised me that Inmate West had refused to comply with his orders. I entered the Segregation Unit to talk with Inmate West. I instructed Inmate West to allow himself to be handcuffed. He refused. I attempted to persuade him to comply with my orders. He still refused. I then advised him that he would be physically escorted to his assigned dorm if necessary. Inmate West then backed up to the rear of his cell, assumed a defensive posture, and stated that he would fight anyone who entered his cell.

I advised my Supervisor, Warden Louis Boyd, of Inmate West's actions. I advised Sgt. Logan that a cell extraction had been authorized by Warden Boyd if needed. I instructed Sgt. Logan to have his Segregation Unit Rovers to dress in protective gear and prepare for a possible extraction. Sgt. Logan, Sgt. Gerald Wright, Sgt. Larry Peavy, Officer Joel Tew, Officer Dexter Baldwin, Officer Matthew Campbell and I approached Inmate West's cell. Sgt. Wright repeated orders to Inmate West to approach the cell door to be handcuffed. Inmate West refused, clenched his fist, and again threatened to harm anyone who entered the cell.

Per my instruction, Sgt. Wright opened the cell door, and the extraction team entered the cell. Officer Campbell pushed Inmate West face down to the bed with the Electronic Shield. Inmate West resisted and attempted to keep from being restrained. Sgt. Peavy and Officer Baldwin placed leg irons on Inmate West. Inmate West attempted to hold his hands beneath his chest as Sgt. Logan and Officer Tew



Affidavit – Kenneth Sconyers
Civil Action – 2:08-CV-82-MEF
Page 2

attempted to handcuffed him. It appeared that Inmate West could bite Officer Tew as he attempted to relocate Inmate West's hands. I stepped into the cell and held Inmate West's head away from Officer Tew's hands. Sgt. Logan struck Inmate West on the back with his hand. Inmate West was then handcuffed by Sgt. Logan and Officer Tew. All use of force ceased when Inmate West was handcuffed. I stepped out of the cell. Inmate West was removed from his cell and escorted to the Health Care Unit.

Not only did Inmate West refuse to be handcuffed, he threatened to harm anyone who entered his cell. He was asked several times by three different supervisors to comply with the orders. To my knowledge, at no time during the extraction did Inmate West lose consciousness. Inmate West was not beaten as he alleged. Inmate West walked to the Health Care Unit with escorts. He received prompt medical care and was temporarily housed in the Health Care Unit for observation.

KENNETH SCONYERS

SWORN TO AND SUBSCRIBED TO before me this the ____4th____ day of
___March_____, 2008.

NOTARY PUBLIC

My Commission Expires: ___9/11/2011_____

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. WEST, #110315              )
    Plaintiff,                  )
                                    )
VS.                                 )
                                    )        CASE NO. 2:08-CV-82-MEF
                                    )
KENNETH SCONYERS, et al.,           )
    Defendant (s)               )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Shawn Logan, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Shawn Logan, and I am presently employed as Correctional Sergeant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On January 18, 2008, I, Sgt. Shawn Logan, was assigned as the Segregation Unit Commander. At approximately 11:45AM, I approached Cell #37, which housed Inmate James West, W/110315. I ordered Inmate West to backup to the tray door so handcuffs could be applied. Inmate West was to be released from the Segregation Unit and placed in Dorm C-1 (Restricted Privilege Dorm) per Warden II Carter F. Davenport. Inmate West refused the order and stated, "Y'all are gonna have to come in here and get me!" Captain Kenneth Sconyers attempted to talk to Inmate West about backing up to the tray door so handcuffs could be applied. Inmate West still refused all orders and backed to the rear of the cell in a defensive stance with his fists clenched. Captain Sconyers notified Warden III Louis Boyd of Inmate West's actions. Warden Boyd instructed Captain Sconyers to proceed with a cell extraction. At approximately 11:50AM, Sgt. Gerald Wright opened Cell #37. Officer Matthew Campbell entered the cell first with the stun shield. Officer Campbell pinned Inmate West against the rear wall of the cell. Inmate West struggled to get away and fell to the bed with Officer Campbell. Sgt. Larry Peavy and Officer Dexter Baldwin entered the cell and grasped Inmate West's legs. Officer Joel Tew and I entered the cell next. I ordered Inmate West to stop resisting and place his hands behind his back. Inmate West refused to comply and continued to struggle in an attempt to break free of the officers. Inmate West was face down on the bed. Inmate West had his arms locked underneath him and would not remove them. Inmate West raised his head up and appeared to be attempting to bite Officer Tew on his arms. Captain Sconyers was at the cell door and placed his hands behind Inmate West's head to prevent him from biting Officer Tew. I ordered Inmate West to stop resisting and place his hands behind his back. Inmate West continued to resist. Officer Tew



DEFENDANT'S
EXHIBIT
2
PENGAD 800-631-6989

Affidavit – Shawn Logan
Civil Action – 2:08-CV-82-MEF
Page 2

applied touch pressure with his right thumb tip to Inmate West's mandibular angle near his left ear. Officer Tew then ordered Inmate West to place his hands behind his back. Inmate West would not comply and continued to struggle with the officers. I then struck Inmate West in his lower back with my right fist and ordered him to place his hands behind his back. Inmate West refused and began to struggle more aggressively. I then struck Inmate West again in his lower back with my right fist and ordered him to stop resisting and place his hands behind his back. Inmate West refused. Sgt. Peavy then placed leg irons on Inmate West's ankles. Officer Tew and I grasped Inmate West's arms and attempted to handcuff him. Officer Campbell grasped Inmate West's right arm and attempted to bring it from under his body. Officers Tew and Campbell finally brought Inmate West's arms from underneath his body and I placed handcuffs on him to the rear. Inmate West then ceased resisting, and all use of force stopped. Sgt. Wright and Officer Tew then pulled Inmate West from Cell #37. Inmate West was escorted to the Health Care Unit for a medical examination and used his own power to walk.

The use of force was not cruel and unusual punishment, excessive or malicious. At no time did I beat Inmate West with my hands or fist in the left and right side of his head to include his earlobes, kneecaps, forearms, or wrists. At no time did I use excessive force in an attempt to inflict pain and injury to Inmate West. The use of force I used was in an effort to get Inmate West to comply with verbal commands that were being given to him. At no time did I observe Inmate West lose consciousness. Inmate West was physically resisting the extraction team during the entire incident.


SHAWN LOGAN

SWORN TO AND SUBSCRIBED TO before me this the 4th day of
March , 2008.

NOTARY PUBLIC

My Commission Expires: 9/11/2011

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES R. WEST, #110315 | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | |
| | ) | CASE NO. 2:08-CV-82-MEF |
| | ) | |
| KENNETH SCONYERS, et al., | ) | |
|     Defendant (s) | ) | |

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Gerald Wright</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Gerald Wright,</u> and I am presently employed as <u>Correctional Sergeant</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On January 18, 2008, I, Sgt. Gerald Wright was assigned to First Shift. At approximately 11:45AM, I participated in a cell extraction on Inmate James West, W/110315, who was housed in Cell #37, because he refused to come to the door and be handcuffed. I opened the cell door and the extraction team entered the cell. I observed Inmate West attempt to elude being pinned against the rear cell by Officer Matthew Campbell, who had the stun shield. Inmate West refused to comply with all verbal commands and continued to physically resist the officers. Inmate West was wrestled to the bed and Sgt. Larry Peavy placed leg irons on him. Sgt. Shawn Logan placed handcuffs on Inmate West. All force ceased once Inmate West was restrained. I assisted in removing Inmate West from the cell by sliding Inmate West off the bed onto the floor. Officer Joel Tew and I helped Inmate West to his feet. Inmate West was taken to the Health Care Unit for a medical examination.


GERALD WRIGHT


SWORN TO AND SUBSCRIBED TO before me this the _____5_____ day of
___March___, 2008.

NOTARY PUBLIC

My Commission Expires: _____8/26/200?_____

DEFENDANT'S
EXHIBIT
3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. WEST, #110315         )
     Plaintiff,             )
                        )
    VS.                   )
                        )     CASE NO. 2:08-CV-82-MEF
                        )
KENNETH SCONYERS, et al.,    )
     Defendant (s)          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Matthew Campbell, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Matthew Campbell, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On January 18, 2008, at approximately 11:45AM, I, Officer Matthew Campbell, was instructed to suit up for a possible cell extraction on Inmate James West, #110315, in Cell #37. Inmate West was given several loud verbal commands to back up to the trap door to be handcuffed. Inmate West stated, "You are going to have to come in and get me." At approximately 11:50AM, Warden Louis Boyd gave the command to go ahead with the cell extraction. At approximately 11:50AM, I entered the cell with the stun shield and pinned Inmate West against the back wall of the cell. Inmate West tried to get away and fell to the bed with me. Inmate West states that I knocked him unconscious and hit him several times in the head and neck area around the ear. Inmate West was never knocked unconscious. Inmate West was sound and alert during the extraction of the cell. I never hit or struck Inmate West in the head, neck or ear area. I pinned Inmate West down with the stun shield. Once Inmate West was down on the bed, I sat the stun shield to the side and assisted in trying to put handcuffs on Inmate West. Inmate West was very conscious as he struggled with the other officers who attempted to restrain him. Once Inmate West stopped resisting all use of force was ceased. Inmate West was escorted to the Health Care Unit by Officer Joel Tew, Captain Kenneth Sconyers, Sgt. Shawn Logan, Sgt. Gerald Wright, Sgt. Larry Peavy, and me for a medical examination. All use of force was justified that was used in the cell extraction of Inmate West. There was never any excessive use of force, nor was Inmate West's rights violated. Due to the point of Inmate West posing a danger to DOC officials, the use of force was necessary.

_____
MATTHEW CAMPBELL

DEFENDANT'S
EXHIBIT
4

PENGAD 800-631-6989

Affidavit – Matthew Campbell
Civil Action – 2:08-CV-82-MEF
Page 2

SWORN TO AND SUBSCRIBED TO before me this the ___10___ th ___ day of
___March___, 2008.

_Linda A Wilkinson_
NOTARY PUBLIC

My Commission Expires: ___9/11/2011___

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. WEST, #110315 )
    Plaintiff, )
     )
     )
VS. )
     )    CASE NO. 2:08-CV-82-MEF
     )
KENNETH SCONYERS, et al., )
    Defendant (s) )

## AFFIDAVIT

    Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Joel Tew, who being known to me and being by me duly sworn, deposes and says under oath as follows:

    My name is Joel Tew, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

    On January 18, 2008, I, Officer Joel Tew, was assigned as Segregation Rover. At approximately 11:50AM, I assisted in a cell extraction of Inmate James West, W/110315, who was housed in Cell #37. During the cell extraction I applied touch pressure with my right thumb tip to Inmate West's mandibular angle nerve, near his left ear. I ordered Inmate West to place his hands behind his back. Inmate West refused to comply with my order. I assisted Officer Matthew Campbell in placing Inmate West's hands behind his back. Sgt. Shawn Logan placed handcuffs on Inmate West behind his back. Inmate West ceased resisting. Sgt. Gerald Wright and I pulled Inmate West from Cell #37. I assisted in escorting Inmate West to the Health Care Unit. At approximately 11:55AM, I was examined by Nurse Mauline Moats. At approximately 12:00PM, Inmate West was examined by Nurse Cynthia Wambles. At approximately 12:10PM, I was released back to duty. Inmate West was placed in the Health Care Unit's Isolation Cell. I have no other knowledge pertaining to allegations of Inmate West. End of Statement.

                             _Joel Tew_
                             JOEL TEW


SWORN TO AND SUBSCRIBED TO before me this the __17th__ day of __March__, 2008.

                             _Linda A Wilkinson_
                             NOTARY PUBLIC

My Commission Expires: __9/11/2011__

DEFENDANT'S
EXHIBIT
5

PENGAD 800-531-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. WEST, #110315          )
    Plaintiff,                )
                      )
VS.                            )
                      )    CASE NO. 2:08-CV-82-MEF
                      )
KENNETH SCONYERS, et al.,       )
    Defendant (s)             )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Larry Peavy, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Larry Peavy, and I am presently employed as Correctional Sergeant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On January 18, 2008, I, Sgt. Larry Peavy reported to Segregation to assist with a cell extraction of Inmate James West, W/110315. At approximately 11:50 AM, Captain Kenneth Sconyers instructed Sgt. Gerald Wright to open Cell #37. Sgt. Wright opened Cell #37 and Officer Matthew Campbell entered the cell first with the Stun Shield. Officer Campbell pinned Inmate West against the rear wall of the cell. Officer Campbell and Inmate West fell onto Inmate West's back. Officer Dexter Baldwin and I grasped Inmate West's legs. Sgt. Shawn Logan ordered Inmate West to stop resisting. Inmate West failed to comply with the order. I placed leg irons on Inmate West's ankles. Officer Campbell and Officer Joel Tew escorted Inmate West out of Cell #37. Captain Sconyers, Sgt. Logan, Sgt. Wright, Officer Tew, Officer Campbell, and I escorted Inmate West to the Health Care Unit for examination. At approximately 12:20 PM, I was examined by Nurse Mauline Moats and released back to duty. Only the minimum amount of force was used to extract Inmate West from his cell. Once Inmate West ceased resisting, all use of force was stopped. END OF STATEMENT.

                                _____
                                Larry Peavy, Correctional Sergeant

SWORN TO AND SUBSCRIBED TO before me this the ___8___ day of
___march___, 2008.

                                _____
                                NOTARY PUBLIC

My Commission Expires: ___6-7-2010___

DEFENDANT'S
EXHIBIT
6

PENGAD 800-631-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. WEST, #110315 )
    Plaintiff, )
 )
VS. )
 )   CASE NO. 2:08-CV-82-MEF
 )
KENNETH SCONYERS, et al., )
    Defendant (s) )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Dexter Baldwin, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Dexter Baldwin, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On January 18, 2008, I, Officer Dexter Baldwin was assigned as Segregation Rover. I assisted with a cell extraction of Inmate James West, W/110315, with Captain Kenneth Sconyers, Sgt. Shawn Logan, Sgt. Larry Peavy, Sgt. Gerald Wright, Officer Joel Tew, and Officer Matthew Campbell. Captain Sconyers and Sgt. Logan ordered Inmate West to back up to the tray door to be handcuffed, but Inmate West refused. Inmate West stated that we would have to come in and get him. We entered the cell and extracted Inmate West. Inmate West was escorted to the Health Care Unit for a body chart, and was placed in the Health Care Unit's isolation cell. The other Officers and I were released back to duty.

DEXTER BALDWIN

SWORN TO AND SUBSCRIBED TO before me this the 20 day of March, 2008.

NOTARY PUBLIC

My Commission Expires: 7/11/2011

DEFENDANT'S EXHIBIT 7

**AFFIDAVIT**

JAMES WEST, #110315
    PLAINTIFF,

        VS                        CASE NO. 2:08-CV-82-MEF

KENNETH SCONYERS, et al.
    DEFENDANT (S)


STATE OF ALABAMA
EASTERLING CORRECTIONAL FACILITY


    I, <u>Sherry Seals</u>, hereby certify and affirm that I am a <u>Classification Supervisor</u>, at Easterling Correctional Facility; that I am one of the custodians of <u>Inmate Records</u> at this institution; that the attached document (s) are true, exact, and correct photocopies of certain documents maintained here in the <u>Classification Unit</u>; and that I am over the age of twenty-one years; and competent to testify to the aforesaid documents and matters stated therein.

    I further certify and affirm that said documents are maintained in the usual and ordinary course of business at the Easterling Correctional Facility; and that said documents (and the entries therein) were made at, or reasonably near, the time that by, or from information transmitted by, a person with knowledge of such facts, events and transactions referred to therein are said to have occurred.

    This, I do hereby certify and affirm to on this the ___10th___ day of ___March___, 20 _08_ .


SWORN TO AND SUBSCRIBED BEFORE ME THIS THE _10th_ DAY OF ___March___, 20_08_ . MY COMMISSION EXPIRES: _My Commission Expires Jan. 24, 2009_

NOTARY PUBLIC

PENGAD 800-631-6989    **DEFENDANT'S EXHIBIT** ___8___

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| 1. Institution: **Easterling Correctional Facility** | 2. Date: **1/18/08** | 3. Time: **11:45 AM** | 4. Incident Number: **ECF-08-093** | Class Code: **B** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: **Segregation Unit, Cell #37** | 6. Type of Incident **#56 – Failure to obey a direct order of an ADOC Official(USE OF FORCE)** |
|---|---|

| 7. Time Incident Reported: **11:50 AM** RECEIVED JAN 2 8 2008 | 8. Who Received Report: **Captain Kenneth Sconyers** |
|---|---|

| 9. Victims: | Name | | | AIS |
|---|---|---|---|---|
| a. | **N/A** | No. | **N/A** | |
| b. | | No. | | |
| c. | | No. | | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | **James West** | No. | **W/110315** | a. | **Kenneth Sconyers** | No. | **Captain** |
| b. | | No. | | b. | **Larry Peavy** | No. | **Sgt.** |
| c. | | No. | | c. | **Gerald Wright** | No. | **Sgt.** |
| d. | | No. | | d. | **Joel Tew** | No. | **C.O.** |
| e. | | No. | | e. | **Dexter Baldwin** | No. | **C.O.** |
| | | | | f. | **Matthew Campbell** | No. | **C.O.** |
| | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence

**N/A**

13. Description of Evidence:

**N/A**

14. Chain of Evidence:

a  **N/A**
b
c
d
e

15. Narrative Summary:

On January 18, 2008, Sgt. Shawn Logan was assigned as the Segregation Unit Commander. At approximately 11:45 AM, Sgt. Logan and Captain Kenneth Sconyers approached Cell #37, which housed Inmate James West, W/110315. Captain Sconyers and Sgt. Logan ordered Inmate West to back up to the tray door so handcuffs could be applied. Inmate West refused the order and stated, "Y'all are gonna have to come in here and get me!" Inmate West backed towards the rear of the cell, assumed a defensive stance and clenched his fists. At approximately 11:46 AM, Captain Sconyers notified Warden III Louis Boyd of the incident. Warden Boyd instructed Captain Sconyers to proceed with a cell extraction. At approximately 11:50 AM, Captain Sconyers, Sgt. Logan, Sgt. Larry Peavy, Sgt. Gerald Wright, Officer Joel Tew, Officer Dexter Baldwin, and Officer Matthew Campbell approached Cell #37. Captain Sconyers instructed Sgt. Wright to open Cell #37. Sgt. Wright opened Cell#37, and Officer Campbell entered first with the stun shield. Officer Campbell pinned Inmate West against the rear wall. Inmate West struggled to get away, and fell to the bed with Officer Campbell. Sgt. Peavy and

Distribution:   ORIGINAL AND ONE (1) COPY to Central I & I Division    COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                COPY to Institutional File                           COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:<br>**Easterling Correctional Facility** | Incident Number:<br>**ECF-08-** | Class Code:<br>**B** |
|---|---|---|
| Date:<br>**January 18, 2008** | Type of Incident: **#56- Failure to obey a direct order of an ADOC Official (USE OF FORCE)** | |

Narrative Summary (Continued) **Page No. 2**

Officer Baldwin grasped Inmate West's legs. Sgt. Logan ordered Inmate West to stop resisting and place his hands behind his back. Inmate West refused to comply and continued to struggle. Inmate West turned his head towards Officer Tew and attempted to bite his left arm. Captain Sconyers placed his hands behind Inmate West's head and prevented Inmate West from biting Officer Tew. Officer Tew applied touch pressure with his right thumb tip to Inmate West's mandibular angle nerve near his left ear. Officer Tew ordered Inmate West to place his hands behind his back. Inmate West refused the order. Sgt. Logan struck Inmate West in his lower back with his right fist and ordered Inmate West to place his hands behind his back. Inmate West refused and continued to resist. Sgt. Logan struck Inmate West again in the lower back with his right hand and ordered Inmate West to place his hands behind his back. Inmate West refused to comply and began to struggle even more. Sgt. Peavy placed leg irons on Inmate West's ankles. Sgt. Logan and Officer Tew grasped Inmate West's arms and attempted to handcuff him. Officer Campbell grasped Inmate West's right arm. Officers Tew and Campbell brought Inmate West's arms from underneath his body where Sgt. Logan could apply handcuffs. Sgt. Logan placed handcuffs on Inmate West to the rear. Inmate West ceased resisting, and all use of force ceased. Sgt. Wright and Officer Tew pulled Inmate West from Cell #37. Captain Sconyers, Sgt. Logan, Sgt. Peavy, Sgt. Wright, Officer Tew and Officer Campbell escorted Inmate West to the Health Care Unit for an examination. At approximately 11:55 AM, Nurse Mauline Moats examined Officers Campbell and Tew. At approximately 12:00 PM, Nurse Cynthia Wambles examined Inmate West, and Nurse Moats examined Captain Sconyers, Sgt. Logan, Sgt. Peavy, Sgt. Wright, and Officer Baldwin. At approximately 12:05 PM, Officer Campbell was released back to duty (See attached medical report). At approximately 12:10 PM, Sgt. Logan and Officer Tew were released back to duty (See attached medical reports). At approximately 12:15 PM, Sgt. Wright was released back to duty and Warden Boyd entered the Health Care Unit (See attached medical report). Warden Boyd verbally reprimanded Inmate West on his negative behavior. Inmate West replied that the officers could get ready, because this was going to happen every time someone tried to put handcuffs on him. At approximately 12:20 PM, Sgt. Peavy was released back to duty (See attached medical report). At approximately 12:25 PM, Captain Sconyers was released back to duty (See attached medical report). At approximately 12:30 PM, Officer Baldwin was released back to duty (See attached medical report). At approximately 12:40 PM, per orders of Dr. Jean Darbouze, Inmate West was placed in the Isolation Cell in the Health Care Unit for observation (See attached medical report). At approximately 2:00 PM, Sgt. Logan completed a Duty Officer Report and e-mailed it to the appropriate officials (See attached Duty officer Report and statements from Captain Sconyers, Sgt. Peavy, Sgt. Wright, Officer Tew, Officer Baldwin, and Officer Campbell). Inmate West remained housed in the Isolation Cell in the Health Care Unit pending disciplinary action for rule violation #56-Failure to obey a direct order of and ADOC Official. A Use of Force Investigation Sheet was completed by Captain Jeffery Knox (See attached Use of Force Investigation Sheet).

*Sgt. Shawn E. Logan*
Sgt. Shawn Logan

ADOC Form 302-B – June 1, 2005

# STATEMENT

On January 18, 2008, I, Officer Joel Tew, was assigned as a Segregation Unit Rover. At approximately 11:45 AM, a cell extraction was conducted on Inmate James West, W/110315, by Captain Kenneth Sconyers, Sgt. Shawn Logan, Sgt. Larry Peavy, Sgt. Gerald Wright, Officer Dexter Baldwin, Officer Matthew Campbell, and myself because Inmate West was refusing to be handcuffed for a cell movement. I entered the cell after Officer Campbell, who had the stun shield. I grasped Inmate West's left arm after he and Officer Campbell went down to the bed. I assisted Officer Campbell in placing Inmate West in the prone position on his bed. Inmate West continued to resist by trying to hold his arms underneath his body. Inmate West turned his head towards my left arm and opened his mouth, as if he wanted to bite my arm. I applied pressure with the tip of my right thumb to Inmate West's mandibular angle nerve near his left ear. Officer Baldwin held Inmate West's legs while Sgt. Peavy placed leg irons on him. I ordered Inmate West to place his hands behind his back. Inmate West finally placed his hands behind his back, and Sgt. Logan placed handcuffs on Inmate West to the rear. **END OF STATEMENT.**

_CO Noel Tew_
Officer Joel Tew

# STATEMENT

On January 18, 2008, I, Sgt. Larry Peavy, was assigned as a First Shift Supervisor. At approximately 11:45 AM, I responded to a call from Sgt. Shawn Logan to assist in a cell extraction in the Segregation Unit. Sgt. Gerald Wright opened Cell#37, where Inmate James West, W/110315, was housed. Inmate West was refusing to get handcuffed. Officer Matthew Campbell entered the cell first with the stun shield. Sgt. Shawn Logan, Officer Joel Tew, Officer Dexter Baldwin and I entered next. Officer Baldwin held Inmate West's legs, and I placed leg irons on him. Sgt. Logan placed handcuffs on Inmate West to the rear. Inmate West was removed from the cell and taken to the Health Care Unit. **END OF STATEMENT.**

Sgt. Larry Peavy

# **STATEMENT**

On January 18, 2008, I, Officer Dexter Baldwin, was assigned as a Segregation Unit Rover. At approximately 11:45 AM, a cell extraction was conducted on Inmate James West, W/110315, by Captain Kenneth Sconyers, Sgt. Shawn Logan, Sgt. Larry Peavy, Sgt. Gerald Wright, Officer Joel Tew, Officer Matthew Campbell, and myself.  I grasped Inmate West's legs and Sgt. Peavy placed leg irons Inmate West.  Inmate West was restrained and escorted to the Health Care Unit for a body chart.  **END OF STATEMENT.**

Officer Dexter Baldwin

# STATEMENT

On January 18, 2008, I, Officer Matthew Campbell, was instructed by Sgt. Shawn Logan to suit up for a cell extraction in the Segregation Unit. I suited up and also got the stun shield. At approximately 11:45 AM, the cell door was opened and I went in first with the stun shield. I pinned Inmate West against the back wall of the cell, but he struggled and fell onto the bed. Officer Dexter Baldwin held Inmate West's legs while Sgt. Larry Peavy placed leg irons on Inmate West. Officer Joel Tew and I got Inmate West's arms from underneath him, and Sgt. Shawn Logan placed handcuffs on Inmate West. Inmate West stopped resisting and was escorted to the Health Care Unit. **END OF STATEMENT.**

Officer Matthew Campbell

# STATEMENT

On January 18, 2008, I, Sgt. Gerald Wright, was assigned to First Shift.  At approximately 11:45 AM, I participated in a cell extraction on Inmate James West, W/110315, who was housed in Cell #37, because he was refusing to come to the door and get handcuffed.  I opened the cell door, and the extraction team entered the cell.  I observed Inmate West attempt to elude being pinned against the rear wall by Officer Matthew Campbell, who had the stun shield.  Inmate West refused to comply with all verbal commands and continued to physically resist the officers.  Inmate West was wrestled to the bed and Sgt. Larry Peavy placed leg irons on him.  Sgt. Shawn Logan placed handcuffs on Inmate West.  All force ceased once Inmate West was restrained. I assisted in removing Inmate West from the cell.  I and Officer Joel Tew helped Inmate West to his feet.  Inmate West was taken to the Health Care Unit for a medical examination.  **END OF STATEMENT.**

Sgt. Gerald Wright

Statement
1/18/08

On 1/18/08, at approximately 11:30 AM, I spoke with Inmate James West, W/110315, at his assigned cell in the Segregation Unit. I advised Inmate West that he was being released from the segregation unit and was to be assigned to the Restricted Privilege Dormitory. Inmate West had already refused orders from Sgt. Shawn Logan to pack his property and get ready to be released from segregation. I advised Inmate West to back up to the door to be handcuffed. He refused. I made several attempts to persuade Inmate West to comply with the orders given him. He refused to comply, and I advised him that he would be physically escorted to his new dorm assignment if necessary. Inmate West stated that he was going to fight anyone who entered the cell. He backed up to the rear of his cell and assumed a defensive stance.

I advised Warden Louis Boyd of the incident. I advised Sgt. Logan and the Segregation Unit rovers to dress in protective gear and to prepare to remove Inmate West from his cell if necessary and escort him to Dorm C-1. I accompanied Officers Joel Tew and Dexter Baldwin and Sgts. Gerald Wright, Larry Peavy, and Logan, to Inmate West's assigned cell. Sgt. Wright instructed Inmate West to back up to the door to be handcuffed. Inmate West again refused and assumed a defensive stance as he threatened to harm anyone who entered his cell. As I instructed, Sgt. Wright opened the door. Officer Matthew Campbell entered with the Ultron Ice Shield (electronic stun shield) and pushed Inmate West to the bed. Officer Baldwin with the assistance of Sgt. Peavy restrained Inmate West's feet and legs. Officer Tew and Sgt. Logan attempted to handcuff Inmate West to the rear as Inmate West resisted and attempted to hold his hands underneath his chest. It appeared that Inmate West was intending to bite Officer Tew as Officer Tew attempted to reposition Inmate West's hands. I placed both of my hands behind Inmate West's head and held his head away from Officer Tew's arms as Officer Tew and Sgt. Logan succeeded in handcuffing Inmate West to the rear. Sgt. Wright, with the assistance from the other officers removed Inmate West from his cell. All use of force ceased, and Inmate West was escorted to the infirmary where he and all Officers involved in the incident received a medical examination. Inmate West remained in the Health Care Unit Observation Cell pending further observation. No injuries were noted to any officer involved.

Kenneth Sconyers, Captain

# Alabama Department of Corrections
# Duty Officer Report

Class Code  **B**

(Use of Force)

Type of Incident:  R/V # 56-Failure to obey a direct order          **Easterling Correctional Facility**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Victim(s): | **N/A** | | AIS# | | R/S | | DOB |
| | | | AIS# | | R/S | | DOB |
| Suspects(s): | **James West** | | AIS# | **110315** | R/S | **W/M** | DOB |
| | | | AIS# | | R/S | | DOB |
| | | | AIS# | | R/S | | DOB |

Sentenced From:  **Mobile County**          Date of Sentence: **06-28-1974**

Offense(s):  **Murder I**          Length of Sentence: **999 years**

Minimum Release Date:  **00-00-0000**

Date:  **01/18/08**   Time:  **11:45 AM**   Location:  **Segregation Unit, Cell #37**

Brief Narrative:   On January 18, 2008, Sgt. Shawn Logan was assigned as the Segregation Unit Commander.  At approximately 11:45 AM, Sgt. Logan and Captain Kenneth Sconyers ordered Inmate James West, W/110315, to back up to the tray door, so handcuffs could be applied.  Inmate West refused and stated, "Y'all are gonna have to come in and get me."  At approximately 11:46 AM, Capt. Sconyers notified Warden III Louis Boyd of the incident.  Warden Boyd advised Capt. Sconyers to proceed with a cell extraction.  At approximately 11:50 AM, Sgt. Gerald Wright opened Cell #37 door.  Officer Matthew Campbell entered the cell with the stun shield and pinned Inmate West to the rear wall of the cell.  Inmate West struggled and attempted to get away from Officer Campbell. Officer Campbell and Inmate West fell to the bed.  Sgt. Logan ordered Inmate West to stop resisting and place his arms behind his back.  Inmate West refused and continued to struggle. Officer Joel Tew grasped Inmate West's right arm.  Sgt. Larry Peavy grasped Inmate West's legs.  Officer Campbell grasped Inmate West's left arm.  Sgt. Logan placed handcuffs on Inmate West to the rear.  Sgt. Peavy placed leg irons on Inmate West.  Sgt. Wright and Officer Tew pulled Inmate West from Cell #37.  Inmate West was escorted to the Health care Unit for an examination.   Inmate West was placed in the holding cell for observation per orders of Dr. Jean Darbouze.  Inmate West is pending disciplinary action for rule violation #56-Failure to obey a direct of an ALDOC Official.

(Use ADOC Form 302-B for Continuation of narrative)

| | | | | |
|---|---|---|---|---|
| Official Reporting: | **Sgt. Shawn Logan** | Date: | **01/18/08** | Time: 2:00 PM |
| Receiver of Report: | | | | |
| Deputy Comm. of Operations: | | Date: | | Time: |
| Inst. Coordinator: | | Date: | | Time: |
| Investigations: | | Date: | | Time: |
| Public Information Officer: | | Date: | | Time: |

ADOC Form 302-C – June 1, 2005

## USE OF FORCE
## INVESTIGATION SHEET

DATE: January 23, 2008                    TIME: 3:00PM

**LIST BELOW PERSONNEL INVOLVED/**          **LIST BELOW INMATES INVOLVED/**
**INTERVIEWED**                             **INTERVIEWED**

Captain Kenneth Sconyers                    James West, W/110315
Sgt. Larry Peavy
Officer Joel Tew


**FINDING:** On January 23, 2008, at approximately 3:00PM, Captain Jeffery Knox conducted an investigation involving a use of force incident with Inmate James West, W/110315. The investigation revealed that on January 18, 2008, at approximately 11:45AM, Inmate James West was ordered by Captain Kenneth Sconyers and Sgt. Shawn Logan to back up to his cell tray door so he could be handcuffed. Inmate West was being moved to another cell. Inmate West refused to obey numerous lawful orders. A Cell Extraction Team consisting of Sgt. Larry Peavy, Officers Matthew Campbell and Dexter Baldwin entered Inmate West's cell and physically removed him from his cell. Inmate West physically resisted until he was restrained with handcuffs. Inmate West was removed from his cell and escorted to the Health Care Unit for an examination.


**THE USE OF FORCE WAS JUSTIFIED:**        The use of force was necessary to compel Inmate West to move to another cell. Inmate West was physically removed from the cell because he failed to obey a lawful order.


_Jeff Knox, Corr Captain_
INVESTIGATING OFFICER'S SIGNATURE

Date: 1/25/08

ATTACHMENT #1 SOP 327-02

# DEPARTMENT OF CORRECTIONS

## EMERGENCY / Body Chart TREATMENT RECORD
(OTHER)

| DATE 1-18-08 | TIME 1200 AM/PM | FACILITY: ECF ☐SIR ☐PDL ☐ESCAPEE ☐ | ☐EMERGENCY ☒OTHER |
|---|---|---|---|

**ALLERGIES** NKDA    SpO2 98% RA

**CONDITION ON ADMISSION** ☐GOOD ☒FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA

**VITAL SIGNS: TEMP** 97 ORAL/RECTAL **RESP.** 22 **PULSE** 104 **B/P** 120/74 **RECHECK IF SYSTOLIC** <100 >50

**NATURE OF INJURY OR ILLNESS**
No comment when asked why needed body chart.
S- C/o L hip pain, ⊕↓ back pain, + L shoulder pain.

**PHYSICAL EXAMINATION**
O- W/m escorted to HCU by SGT Peav, SGT Logan, SGT Wright, and CPT Sconyers, CO Tew, CO Baldwin. Walking c̄ assistance A&O x3. Resp. easy. Skin warm + dry to touch. Lungs CTA. ⊕ Bruising noted c̄ to Bilateral forearms, skin tear c̄ minimal bleeding noted to L elbow. ⊕ Bruising noted to ↑ chest area. + R ↑ arm superficial scratches noted to L neck. ⊕ Abrasion L anterior ear - L ear canal : Tm intact ⊖ bleeding/swelling noted. R ear : Tm intact ⊕ edema ⊕ erythema ⊕ drainage. ⊕ Abrasion noted to R Hand - 4th digit. ⊕ moderate edema noted to L ↓ back - pt states unable to void. Able to move all extremities s̄ limitation. C/o shoulder pain when moving R arm. Also c/o pain to L leg standing.

**ORDERS, MEDICATION, etc.**
Admit to Inf. Hold in HCU safe cell for observation
Motrin 800mg po TID PRN X 14 days
Baclofen 20mg po TID PRN X 14 days
X-Ray R shoulder / L-S spine
UA today, Chem 7, CBC
VO. Dr. Dalrauze / C Wambles, RN

**DIAGNOSIS**
Soft Tissue Edema vs Hematoma L flank, multiple Abrasions

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE / / | TIME AM/PM | RELEASE/TRANSFERRED TO ☐DOC ☐AMBULANCE Hold in HCU | CONDITION ON DISCHARGE ☐SATISFACTORY ☐POOR ☐FAIR ☐CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE C Wambles RN | DATE 1-18-08 | PHYSICIAN'S SIGNATURE | DATE 1/18/08 | CONSULTATION |
|---|---|---|---|---|

**PATIENT'S NAME (LAST, FIRST, MIDDLE)** West, James | AGE | **DATE OF BIRTH** 11-3-45 | **R/S** W/M | **AIS #** 110315

No other C/o voiced. ~~No other injuries noted.~~ error ab ® Abrasion noted
to bilateral knees. No other injuries noted.

O- DOC Body Chart

P- T Areas cleansed c̄ NS. Band-aid applied to
® elbow area. Ice applied to ① ↓ back.
Dr. Dalrenze consulted- orders received.

# DEPARTMENT OF CORRECTIONS
## EMERGEN̶ I DOC B/C TREATME. RECORD
(OTHER)

| DATE 1/18/08 | TIME 12:00 AM/(PM) | FACILITY ECF  ☐ SIR ☐ PDL ☐ ESCAPEE ☐ _____ | ☐ EMERGENCY  ☐ OTHER |
|---|---|---|---|

| ALLERGIES | CONDITION ON ADMISSION ☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |
|---|---|

VITAL SIGNS: TEMP 98¹ ☐ORAL ☐RECTAL  RESP. 21  PULSE 102  B/P 122 / 76  RECHECK IF SYSTOLIC _____ <100 > 50

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION/ SUTURES |
|---|---|---|---|---|---|

S° DOC B/C
O— B/m ambulatory to HCU
c̄ steady gait per self.
A&O x3 Resp c̄ ease. Skin
W/D to touch. Ø injuries
noted.

**PHYSICAL EXAMINATION**
A— DOC B/C
P— Release to DOC

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE 1/18/08 | TIME 12:30 AM/(PM) | RELEASE/TRANSFERRED TO ☑ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE Maurline Monte LPN | DATE 1-18-08 | PHYSICIAN'S SIGNATURE (T) | DATE 1/8/08 | CONSULTATION |
|---|---|---|---|---|

| PATIENT'S NAME (LAST, FIRST, MIDDLE) C O D. Baldwin | AGE | DATE OF BIRTH 1. 24 . 69 | R/S B/M | AIS # |
|---|---|---|---|---|

**DEPARTMENT OF CORRECTIONS**

EMERGENCY / DOC B/C (OTHER) TREATMENT RECORD

| DATE 1/18/08 | TIME 11:55 AM/PM | FACILITY: Eesterling ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ EMERGENCY ☐ OTHER |
|---|---|---|---|

ALLERGIES Cudeine Sat 97%    CONDITION ON ADMISSION ☒GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

VITAL SIGNS: TEMP 96.9 (ORAL) RECTAL   RESP. 18   PULSE 119 B/P 120/80   RECHECK IF SYSTOLIC <100 > 50

| NATURE OF INJURY OR ILLNESS | ABRASION/// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION/ SUTURES |
|---|---|---|---|---|---|

S "DOC B/C")
Ct w/m ambulatory to
HCU per self. A+O x 3-
Resp ease. Skin w/D
to touch. Red area noted
to back of ® forearm + wrist.
∅ broken skin, broken skin
area on ® elbow. ∅ bleeding

PHYSICAL EXAMINATION
noted to injuries. Officer had
T/M blood on ® hand. ∅
broken skin noted to hand.
Scratch noted to ® knee.
∅ other injuries noted
A - DOC B/C
P - Release to DOC

ORDERS, MEDICATION, etc.

DIAGNOSIS

INSTRUCTIONS TO PATIENT

| RELEASE/TRANSFER DATE 1/18/08 | TIME 12:00 AM/PM | RELEASE/TRANSFERRED TO ☒DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE Mauline Moote LPN | DATE 1/18/08 | PHYSICIAN'S SIGNATURE | DATE 1/18/08 | CONSULTATION |
|---|---|---|---|---|

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Campbell, Matthew | AGE 35 | DATE OF BIRTH 9.6.72 | R/S W/M | AIS # C/0 |
|---|---|---|---|---|

DEPARTMENT OF CORRECTIONS
EMERGENCY / MEDICAL TREATMENT RECORD
(OTHER)

| DATE | TIME | FACILITY | _ECF_ | ☐ EMERGENCY |
|------|------|----------|-------|-------------|
| 1/18/08 | 12:00 AM/PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | | ☐ OTHER |

**ALLERGIES** _Sat- 98%_

**CONDITION ON ADMISSION** ☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

**VITAL SIGNS:** TEMP _98°_ ☐ ORAL ☐ RECTAL   RESP. _16_   PULSE _108_   B/P _160/98_

**RECHECK IF SYSTOLIC** <100> 50

**NATURE OF INJURY OR ILLNESS**

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION/ SUTURES |
|---|---|---|---|---|

S " Doc B/C
O - B/M Ambulatory To HCU
Per self c̄ steady gait.
A+O x3 Resp c̄ ease.
Skin W/D To touch.
Ø injuries noted
A - Doc B/C
P - Release To Doc

**PHYSICAL EXAMINATION**

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE | TIME | RELEASE/TRANSFERRED TO- ☐ DOC | CONDITION ON DISCHARGE |
|---|---|---|---|
| 1 / 18 / 08 | 12:15 AM/PM | ☐ AMBULANCE ☐ | ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| Pauline Moore LPN | 1/18/08 | A | 1/18/08 | |

| PATIENT'S NAME (LAST, FIRST, MIDDLE) | AGE | DATE OF BIRTH | R/S | AIS # |
|---|---|---|---|---|
| Sgt Wright, Gerald | 41 | 6-123-66 | B/M | |

# DEPARTMENT OF CORRECTIONS
## EMERGENCY / TREATMENT RECORD
(OTHER)

| DATE 1/18/08 | TIME 1730 AM/PM | FACILITY ___ ECF ___ □ SIR □ PDL □ ESCAPEE □ ___ | □ EMERGENCY ☑ OTHER |
|---|---|---|---|

**ALLERGIES**

**CONDITION ON ADMISSION** ☑ GOOD □ FAIR □ POOR □ SHOCK □ HEMORRHAGE □ COMA

**VITAL SIGNS:** TEMP 97⁵ ORAL/RECTAL   RESP. 16   PULSE 82   B/P 120/90   RECHECK IF SYSTOLIC ___ <100 > 50

**NATURE OF INJURY OR ILLNESS**

S " DOC B/C
O - W/M ambulatory to HCU
per self c̄ steady gait.
A+O X3 Resp c̄ one - St
w/d to touch. Ø injuries
noted.
A DOC B/C
P Release to DOC

| ABRASION/// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION/ SUTURES |
|---|---|---|---|---|

**PHYSICAL EXAMINATION**

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE 1/18/08 | TIME 12:30 AM/PM | RELEASE/TRANSFERRED TO ☑ DOC □ AMBULANCE □ | CONDITION ON DISCHARGE ☑ SATISFACTORY □ POOR □ FAIR □ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE Pauline Moore RN | DATE 1-18-08 | PHYSICIAN'S SIGNATURE | DATE 1/18/08 | CONSULTATION |
|---|---|---|---|---|

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Captain K. Sconyers | AGE 56 | DATE OF BIRTH 5 19 51 | R/S WM | AIS # |
|---|---|---|---|---|

DEPARTMENT OF CORRECTIONS
EMERGENCY TREATMENT RECORD
(OTHER)

| DATE 1/18/08 | TIME 12:00 AM/PM | FACILITY ECF ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ EMERGENCY ☑ OTHER |

**ALLERGIES**

**CONDITION ON ADMISSION**
☐ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

VITAL SIGNS: TEMP 98.4 (ORAL) RECTAL   RESP. 18   PULSE 88   B/P 138/82   RECHECK IF SYSTOLIC <100 > 50

**NATURE OF INJURY OR ILLNESS**

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z | LACERATION/ SUTURES |

S "DOC BC"

O- w/m Ambulatory to HCU per self č steady gait. A+0 x3. Resp č ease. Skin W/D to touch Ø injuries noted.

A- DOC B/C

**PHYSICAL EXAMINATION**

P- Release to DOC

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE 1/18/08 | TIME 12:10 AM/PM | RELEASE/TRANSFERRED TO ☑ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
| NURSE'S SIGNATURE Marlene Moore LPN | DATE 1/18/08 | PHYSICIAN'S SIGNATURE | DATE 1/18/08 | CONSULTATION |

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Sgt. S Logan | AGE 41 | DATE OF BIRTH 11/11/1966 | R/S WM | AIS # |

| DATE | TIME | FACILITY | | ☐ EMERGENCY |
|---|---|---|---|---|
| 1/18/08 | 11:55 AM/PM | ECF | | ✓ OTHER |

**ALLERGIES** NKDA

**CONDITION ON ADMISSION**
☑ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

**VITAL SIGNS:** TEMP 97³ ORAL/RECTAL  RESP. 16  PULSE 84  B/P 116/80  RECHECK IF SYSTOLIC <100 > 50

**NATURE OF INJURY OR ILLNESS**

| ABRASION /// | CONTUSION # | BURN xx/xx | FRACTURE Z/Z | LACERATION/ SUTURES |
|---|---|---|---|---|

S" DOC B/C
O- w/m ambulatory to HCU
per self c steady gait.
A+O X 3. Resp c ease. Skin
w/D to touch. Ø injuries
noted.
A- DOC B/C
P- Release to DOC

**PHYSICAL EXAMINATION**

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE | TIME | RELEASE/TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|
| 1/18/08 | 12p AM/PM | ☑ DOC ☐ AMBULANCE ☐ | ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| Marline Moore  | 1/18/08 |  | 1/18/08 | |

| PATIENT'S NAME (LAST, FIRST, MIDDLE) | AGE | DATE OF BIRTH | R/S | AIS # |
|---|---|---|---|---|
| CO Joel Tew | 43 | 10/27/64 | 6/M | |

# DEPARTMENT OF CORRECTIONS
## EMERGEN ~~I DOC B/C~~ TREATME  RECORD
(OTHER)

| DATE 1/18/08 | TIME 12:00 PM | FACILITY: ECF<br>☐ SIR  ☐ PDL  ☐ ESCAPEE ☐ | ☐ EMERGENCY<br>☐ OTHER |
|---|---|---|---|

**ALLERGIES** Sat 98%

**CONDITION ON ADMISSION**
☐ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA

**VITAL SIGNS:** TEMP 99² ☐ ORAL ☐ RECTAL   RESP. 16   PULSE 91   B/P 118/80   RECHECK IF SYSTOLIC <100 > 50

**NATURE OF INJURY OR ILLNESS**

S " DOC B/C
O - W/M ambulatory to HCU
per self c̄ steady gait.
A+O x 3. Resp c̄ ease.
Skin W/D to touch.
∅ injuries noted -
A - DOC B/C
D - Release to DOC

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION/ SUTURES |
|---|---|---|---|---|

**PHYSICAL EXAMINATION**

**ORDERS, MEDICATION, etc.**

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| RELEASE/TRANSFER DATE 1/18/08 | TIME 12:20 AM PM | RELEASE/TRANSFERRED TO DOC<br>☐ AMBULANCE<br>☐ | CONDITION ON DISCHARGE<br>☐ SATISFACTORY  ☐ POOR<br>☐ FAIR  ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE Maurine Moore | DATE 1-18-08 | PHYSICIAN'S SIGNATURE | DATE 1/18/08 | CONSULTATION |
|---|---|---|---|---|

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Yeavy, Larry | AGE 30 | DATE OF BIRTH 5.4.77 | R/S W/M | AIS # |
|---|---|---|---|---|