In The United States District Court
For The Middle District Of Alabama
Northern Division

2008 JUN 10  A 10: 32

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

James B. West,

Plaintiff,

V.

Captain Sanyers, et al.,

Defendants.

2:08-CV-82-MEF

## Plaintiff's Traverse To Defendants' Answer

Come Now the Plaintiff, James B. West, Jr., and submits his Traverse to Defendants' Answer and Motion For Summary Judgment.

### I.

### Plaintiff

James B. West, Jr. was, and is, an inmate confined in the custody of Alabama Department of Corrections, a state governmental agency, on and after January 18, 2008, the date of the Plaintiff's allegations of use of excessive force by all named defendants.

### Defendants

All named defendants were, and are, State of Alabama Merit System employees prior to January 18, 2008 and after January 18, 2008, employed by Alabama Department of Corrections, a state governmental agency, and all employees were assigned duty at Easterling Prison on the afore-mentioned date.

### II.

### Plaintiff's Claim

West was subjected to cruel and unusual punishment, the unnecessary and wanton infliction of pain, during a cell extraction procedure in which all named defendants participated in violation of Plaintiff's federally protected right under the 8th and 14th Amendments to the U.S. Constitution.

## III.

### Defendants' Defenses

1. Defendants deny they violated Plaintiff's constitutional rights.

2. Defendants deny all allegations.

3. Defendants claim the Plaintiff has failed to state a claim upon which relief may be granted.

4. Defendants claim they are entitled to immunity under the Eleventh Amendment to the U.S. Constitution.

5. Defendants claim qualified immunity. (Def's Ans. at p.4)

## IV.

### Statement Of Facts

On January 18, 2008, Plaintiff was being held in confinement in the administrative segregation unit at Easterling Prison. He was being held in cell #37, an 8' x 10' cell which was used to house two prisoners.

Between the time of 1200 - 1300 hours, Sergeant Logan, Segregation Unit Supervisor, asked Plaintiff to back up to the cell door, place his hands together and place his hands through the food tray opening in the cell door to be handcuffed and removed from the cell. Plaintiff refused to comply with the command to be handcuffed.

Sergeant Logan left the area of Cell #37. He returned accompanied by Captain Stougers. Captain Stougers asked Plaintiff if he was refusing to comply with the command to be handcuffed. Plaintiff replied he was refusing to be handcuffed and removed from the cell.

After Captain Stougers spoke to the Plaintiff, he positioned himself in the center of the tier facing the cell. He issued orders to enter the cell. The cell extraction team consisted of Sergeant Logan, Sergeant Pearcy, Sergeant Wright, Officers Campbell, Yaw and Baldwin.

Seven (7) Officers participated in the cell extraction, the above named officers and Captain Stougers. Officer Campbell entered the cell first armed with the electronic stun shield.

2

The Electronic Stun Shield is a device designed with the intent to immobilize or restrain a person when it is applied to any part of the body.

Upon entry to the cell, officer Campbell ran head in into the Plaintiff with the stun shield. He pinned West against the rear wall of the cell. (Def's Exh. #4, Pltf's Exhbs #1, 2)

I was incapacitated upon contact with the stun shield. I was unable to speak other than uttering groaning sounds. My body went limp from the shock. I had no muscular control. Officer Campbell was holding me upon an upright position with the stun shield. (Pltf's Exh. 1, 2, Def's Exhs. 2, 4, 6)

Campbell, using the oval-shaped plexi-glass stun shield, rolled me in the direction of the double metal bunk inside the cell. I fell face first on the bed with my arms and hands trapped underneath my body. (Pltf's Exhs. 3, 4, Def's Exhs. 1, 2, 3, 6) At this point all seven (7) of the officers entered the cell.

While I was lying face down on the bed, one or more of the officers held the back of my head forcing my face into the blue blanket used to cover this mattress. One or more of the officers grabbed my feet and legs. Because the officers were pushing down on the back of my head, I was unable to breathe. Each time I attempted to turn my head to the side so I could breathe, the officers applied greater pressure to the back of my head. (Pltf's Exhs. 2-8, Def's Exhs. 1, 2, 5)

The officers who had hold on my legs, after I was placed in leg irons, began to beat on my kneecaps. Both of my knees were bruised and cut. The right was worse than the left. The scar is visible on my right knee. (See Supp. Rpt. Body and Medical Chart, also see Pltf's Exhs. 1-8)

Because my arms and hands were trapped beneath me, I was unable to move my hands or arms. (See Pltf's Exhs. 2-8, Def's Ans. at p. 5) One or more of the officers began to beat me with fists on the left and right sides of my head and lower left side of my ribs and kidneys. (Def's ans. at p. 6, Def's Exhs. 1, 2, Pltf's Exhs. 1-8)

Because of the repeated blows to the right and left sides of my head and left lower rib cage and kidneys, in addition to the fact I was unable to breathe, I lost consciousness). (See Pltf's Exhs. 2-8)

3

Because I lost consciousness temporarily from the blows inflicted to my head, rib cage and kidneys, I wasn't fully aware of the final tactics used to place handcuffs on me. However, both of my wrists and forearms were one solid bruise from my wrists to my elbows. (Pltf's Ehbs. 1, 2, Def's Supp. Exh. Body, Medical Report)

As I was dragged from the bed to the floor, by one or more of the officers, I regained consciousness. I was drug from the cell to the center of the tier. I was dropped face first on the concrete floor. I was in full body restraints, leg irons and handcuffs.

When I was dropped face first on the concrete floor, one of the officers used his knee to hit me in my left lower rib cage and kidneys. I tried to raise my head up because of the pain. The officer used his knee, foot or hand to push my head back to the concrete floor.

One of the officers shouted, "Get up and walk or I'll drag your mutherfucking ass." I was unable to walk because of the injuries to my knees, left hip and lower back. (Pltf's Ehbs. 1, 2)

Two of the officers lifted me holding me by the arms where the handcuffs were locked into my wrists. They lifted me in such a manner so as to place my full body weight on my shoulder joints. My right shoulder joint popped. I asked the officers to stop pushing upward on my arms. I was escorted the distance from Seg to HCU in this manner. (Pltf's Ehbs. 3-9)

I was given a body chart, placed in a wheelchair, pushed by Sergeant Wright to the Medical Observation Unit. Sergeant Wright assisted me from the wheelchair to the bed mounted approximately six (6) inches off the concrete floor. I was admitted to the infirmary on 1/9/08 for the procedure to start IV solution because I was unable to urinate. I stayed in the hospital five (5) days and four (4) nights.

I was released from HCU and returned to segregation. I was placed in an 8'x10' cell equipped with a metal frame mounted approximately six inches off the floor. I was not given a mattress. I slept on the metal bed frame.

4

# V.

## Argument

West is entitled to summary judgment on his claim that defendants used excessive force. Fed. R. Civ. P., Rule 56 (b) The facts are admitted by defendants that force was applied after West had been shocked with the Electronic Stun Shield and incapacitated and after he was placed face down on the bunk in a prone position.

"Officer Campbell entered the cell first with the Stun Shield. Officer Campbell pinned inmate West against the rear wall of the cell. Officer Campbell and inmate West fell to inmate West's back." (sp) (Def's Exh. #6)

"Captain Sconyers was at the cell door and placed his hands behind inmate West's head. Officer Lew applied touch pressure with his right thumb tip to inmate West's mandibular angle near his left ear. I then struck inmate West in his lower back with my right fist. I then struck inmate West again in his lower back with my right fist. Sgt. Wright and Officer Lew pulled inmate West from cell #37." (Def's Exhs. 1,2,4,5,6)

"Officer Dexter Baldwin and I grasped inmate West's legs. I placed leg irons on inmate West's ankles. I assisted with a cell extraction of inmate West." (Def's Exhs. 6, 7)

West was hospitalized for five (5) days because of the force applied by all named defendants. Medical records support West's claim that he was unable to walk, urinate or eat and that he suffered bruises to his upper and lower extremities. Because of the above defendants are not entitled to summary judgment. In addition to the above, force was applied to West after he was placed in full body restraints. (See Plf's Exhs. 1-9)

Also see _Newsome v. Lee Co. Ala. et al._, 431 F.S. 2d 1189-2006 U.S. Dist. Lexis 31918, Case No. 3:02-CV-500-MEF(WO) May 15, 2006) where this Honorable Court addressed a claim of excessive force and denied summary judgment for defendants.

"Newsome's claims against Tabb for excessive force that amounts to cruel and unusual punishment of a pretrial detainee under the 14th Amendment must be sustained." 431 F.S. 2d at 1200

And, in another case decided by this Court regarding a claim of excessive force, defendants' motion for summary judgment was also denied. Wayne Black v. Lamar Glover, et al., 1:03-CV-734-MEF-SRW, 2006 U.S. Dist. Ct. Lexis 7715 (M.D. Ala. 2006) citing Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002); Hudson v. McMillan, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)

Applicable law will identify those facts that are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment has the burden of demonstrating the absence of a genuine dispute of material facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970).

"For factual issues to be considered genuine they must have a real basis in the record." Matsushita Electric Industrial Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986) quoted in Michael Blackshear v. R.R. Rose, et al., U.S. Dist. Ct. M.D. Fla. Case No. 3:03-CV-1079-J-12-TEM, 2006 U.S. Dist. Lexis 5215.

All named defendants admit force was applied. Defendants further admit force was applied first with the Electronic Stun Shield. Because, "it is not part of the court's function when deciding a motion for summary judgment, to decide issues of material fact but rather determine whether such issues exist to be tried." 477 U.S. at 249, 106 S.Ct. at 2510, defendants' motion for summary judgment is due to be denied.

"The court must avoid weighing conflicting evidence or making credibility determinations." Id. at 255, 106 S.Ct. at 2513-14, clusting "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Ibid.

In this case, "Medical records reflect West was the victim of a significant amount of force." 280 F.3d 1300 "Allegations in prison inmate's complaint, that corrections officers who went to his cell to extract him therefrom when he refused to voluntarily leave to permit a search to be conducted, after using electronic shield to shock and incapacitate inmate, had punched, kicked and beaten him to extent he had to be airlifted from prison to hospital, were sufficient to make out claim under §1983 for violation of his 8th Amendment rights." 280 F.3d at 1295-96.

In this case, West does not challenge the officers' use of the electronic shield which knocked him against the rear wall of the cell; he concedes that some degree of force was lawful in light of his noncompliance with the officers' order to submit to handcuffing so that the officers could remove him from the cell. West only challenges the assault that occurred after he had been incapacitated by the shock of the electronic shield.

The law is clear and well-settled, "It is not constitutionally permissible to administer a beating for punishment because of a prisoner's misconduct." 280 F. 3d at 1301-02

The record in this cause will show, unequivocally, that West was incapacitated and no longer able to pose a threat to the guards' directions, or engage in disruptive behavior. West was subdued and incapacitated lying face down on the bunk in a prone position.

"The Supreme court has made it clear that the same standard applies to all excessive force claims. Any reasonable official understands the contour of this right." Hudson, 503 U.S. at 9, 112 S.Ct. 995

Like the plaintiff in Skrtich, West claims that he was rendered inert by the electric shock and was not resisting the officers' (7) administered a severe beating with no other purpose than the "infliction of pain." 280 F. 3d 1305 Based on the above, defendants' motion for summary judgment is due to be denied.

"Prisoner held able to maintain claim of cruel and unusual punishment under Federal Constitution's 8th Amendment based on officers' excessive use of force not resulting in serious injury." 503 U.S. 1

Therefore, West has stated a claim upon which relief can be granted. And, the question of whether or not excessive force was used is a question for the jury.

"Also... which caused bruises, swelling, loosened teeth, and a cracked dental plate are not de minimis for 8th Amendment purposes." 503 U.S. 10

Defendant Logan admits beating West in the back with his feet. (Def's Exh. #2) Defendants Stringers and Few admit holding West by the back of his head causing West to suffer asphyxiation. (Def's Exhs. #1, 5) Defendants Peavy and Baldwin admit a grasping West's legs. (Def's Exhs. #6, 7) Defendants Wright and Few admit they "slid" elevate West off the bed onto the floor. (Def's Exhs. #3, 5)

7

Defendant Campbell admits that after he "sat (sic) the stun shield to the side, he assisted in trying to put handcuffs on inmate West." (Def's Exh. #4)

"Moreover, we reject the argument that the force administered by each Defendant in this 'collective beating' must be analyzed separately to determine which of the defendants 'blows, if any, used excessive force. The evidence viewed in the light most favorable to Skrtich, is that the 'cell extraction team', including Archie, Dean and Green, acted in concert to administer the beating." 280 F.3d at 1302

In this case seven (7) officers entered cell #37 to extract a 63 year old man. The mere number of the officers implies motive inconsistent with the belief that extraction from the cell #37 was the intended purpose of the defendants and especially when it is considered that each of the defendants knew or should have known West would be incapacitated after being shocked with the stun shield.

"Although a spontaneous attack by a guard is 'cruel' and, we hope, 'unusual', it does not fit any ordinary concept of punishment." Johnson v. Glick, 481 F.2d 1028 (2nd Cir. 1973) at 1032

The complaint should not be dismissed as requested by counsel unless, "it is clear that no relief could be granted under any set of facts consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 22, 29, 81 L.Ed.2d 59 (1984) Chepstow v. Hunt, 381 F.3d 1080 (11th Cir. 2004) Defendants admit they beat West.

All named defendants are sued in their official capacity only to the extent they are all State of Alabama Merit System Employees, employed by a state governmental agency, Alabama Department of Corrections, and thus performing discretionary functions.

The State can do no wrong, therefore any act committed by an employee of the State of Alabama that violates a clearly established right of which a reasonable official would have known, that State employee is not entitled to any immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) Rogers v. Miller, 57 F.3d 986, 988 (11th Cir. 1995) It is an undisputed fact that on 11/8/08 all defendants, all named defendants, committed the beating while on duty as correctional officers representing the State of Alabama.

Regarding counsel's claim that defendants are entitled to qualified immunity, the Supreme Court and the Eleventh Circuit have held: "Defense of qualified immunity is not available in civil rights lawsuits alleging excessive force in violation of 8th Amendment." 280 F.3d at 1295-96

8

## Conclusion

There is a critical issue of material fact as to whether force was applied after West was incapacitated by the shock of the electronic stun shield. As the record accurately reflects, all named defendants admit they applied force after West was incapacitated. If that evidence submitted by the defendants is accepted as true, the only issue remaining to be decided is the amount of damages West is entitled.

This fact is properly decided by the jury. West therefore requests the court set this cause for hearing and to proceed with trial by jury.

Respectfully submitted,

James R. West, Jr.

9

## Certificate Of Service

I hereby certify I have served a copy of this pleading on: Benjamin H. Albritton, Assistant Attorney General, 11 South Union Street, Montgomery, Alabama 36130 by placing a copy in the U.S. Mail first class postage prepaid this the 6th day of June 2008.

James R. West, Jr.

10



# Exhibits

Exhibit #1, - Affidavit of Stephen Morgan

Exhibit #2, - Affidavit of James R. West, Jr.

Exhibit #3, - Affidavit of James R. West, Jr., (Re: Captain Sawyers)

Exhibit #4, - Affidavit of James R. West, Jr., (Re: Sergeant Logan)

Exhibit #5, - Affidavit of James R. West, Jr., (Re: Sergeant Reaves

Exhibit #6, - Affidavit of James R. West, Jr. (Re: Sergeant Wright

Exhibit #7, - Affidavit of James R. West, Jr., (Re: Officer Campbell

Exhibit #8, - Affidavit of James R. West, Jr., (Re: Officer Tew

Exhibit #9, - Affidavit of James R. West, Jr., (Re: Officer Baldwin

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Exhibit-1

JAMES R. WEST, JR.,
        PLAINTIFF

        V.                                    2:08-CV-82-MEF

CAPTAIN SCONYERS, ET AL.,
        DEFENDANTS

## Affidavit Of Stephen Morgan

BEFORE ME THE UNDERSIGNED AUTHORITY, A NOTERY PUBLIC
IN AND FOR SAID COUNTY AND STATE OF ALABAMA AT LARGE, PERSONALLY
APPEARED BEFORE ME STEPHEN MORGAN 136096, WHO BEING KNOWN TO
ME AND BEING FIRST DULY SWORN, SAYS ON OATH AS FOLLOWS.

My NAME IS STEPHEN MORGAN. I AM OVER THE AGE OF TWENTY-ONE
(21). I SUBMIT THE FOLLOWING STATEMENTS BASED ON MY PERSONAL
KNOWLEDGE. I AM COMPETENT TO TESTIFY.

1. I KNOW JAMES R. WEST, JR. PERSONALLY. ON JANUARY 18,
2008 I WAS ASSIGNED TO CELL #36, ADMINISTRATION SEGRAGATION,
EASTERLING PRISON.

2. ON JANUARY 18, 2008, JAMES R. WEST, JR. WAS ASSIGNED TO
CELL # 37, ADMINISTRATION SEGRAGATION, EASTERLING PRISON. ON
JANUARY 18, 2008 BETWEEN THE HOURS OF 12:00 - 1300, WEST
WAS FORCEFULLY REMOVED FROM CELL #37 BECAUSE HE FAILED TO
COMPLY WITH AN ORDER FROM CAPTAIN SCONYERS TO PLACE HIS
HANDS THROUGH THE OPENING IN THE CELL DOOR TO BE HANDCUFFED
AND REMOVED FROM THE CELL. CAPTAIN SCONYERS MADE THE
STATEMENT, "I'VE GOT A JOB TO DO AND YOU'RE GOING TO BE HURT."

3. Captain Sconyers was assisted by Sergeant Logan, Sergeant Wright, Sergeant Peavey, C.O I's Baldwin, Cambell, and Tew. Captain Sconyers stood in front of cell #57 while Logan, Wright, Peavey, ~~Baldon~~ Baldwin, Cambell and Tew entered cell #57. Sconyers observed personally the entire incident on January 18, 2008.

4. Officer Cambell was armed with the large plexiglass electronic riot shield, electronic restraint device (E.R.D). He was also wearing the electronic belt shocking device. When the cell door was unlocked, officer Cambell rushed into the cell. Officers Logan, Wright, Peavey, Baldwin, and Tew followed closely behind Cambell.

5. The segregation cells at Easterling Prison segregation unit are constructed of cinder block. There is no insulation inside the blocks. You can easily hear through the block walls. Conversations in normal tone of voice can be heard clearly and easily.

6. When Officer Cambell entered cell #37, ~~xxxxx~~ ~~xxxxx~~ ~~xxxxx~~ I placed my ear to the wall adjoining cell #57 where West was assigned. I heard what appeared to be the plastic shield hitting West. I heard what appeared to be West falling to the floor. I make this statement based on the fact that when I heard that sound, ~~xxxxx~~ I heard West utter a grunting, moaning sound, uun, ooh. I concluded that was when West was shocked with the shield. I make this state--ment based on the statement of one of the officers who stated, "Put him on the bed face down." I heard the metal legs of the bed scraping on the concrete floor.

7. I NEXT HEARD THE SOUND of METAL CLICKING AS THE OFFICERS WERE PUTTING THE LEG SHACKLES AND HANDCUFFS ON WEST. AFTER I HEARD THE METAL CLICKING SOUNDS, I HEARD WHAT APPEARED TO BE SOUNDS of FLESH BEATING AGAINST FLESH. AS I HEARD THIS SOUND, I COULD HEAR WEST MOANING AS THE BLOWS WERE DELIVERED. I RECALL HEARING 8-10 PUNCHES WHICH SOUNDED AS THOUGH THEY WERE DELIVERED TO THE BODY. THOSE BLOWS HAD A HOLLOW SOUND COMPARED TO OTHER BLOWS I OVERHEARD THAT HAD MORE of A SOLID SOUND AS THOUGH DELIVERED TO THE HEAD OR SOLID PART of THE BODY.

8. I OVERHEARD ONE of THE OFFICERS MAKE THE STATEMENT," IT LOOKS LIKE HE'S OUT of IT. GET HIM OUT of HERE." AT THAT TIME, IMMEDIATELY PROCEEDING THAT STATEMENT, I PERSONALLY OBSERVED SERGEANT WRIGHT DRAG WEST FROM CELL #37. WRIGHT DRUG WEST TO THE MIDDLE of THE CELLBLOCK TIER WHERE CAPTAIN SCONYERS WAS STANDING. WEST WAS WEARING FULL RESTRAINTS, LEG SHACKLES AND HANDCUFFS BEHIND THE BACK.

9. SERGEANT WRIGHT DROPPED WEST FACE FIRST ONTO THE CONCRETE FLOOR IN FRONT of CAPTAIN SCONYERS. WRIGHT THEN FELL, ON KNEE (RIGHT) HITTING WEST IN THE LOWER LEFT RIB CAGE AND KIDNEY AREA. WRIGHT'S LEFT KNEE ON THE BACK of WEST'S NECK. WEST TRIED TO RAISE UP WHEN WRIGHT DROPPED HIS KNEES IN WEST'S BACK. FROM THE LOOK ON WEST'S FACE AND THE MOANING SOUND, IT APPEARED TO ME WEST WAS IN GREAT PAIN.

10. While Wright had both of his knees holding West to the floor, he spoke in a loud voice saying to West, "Are you going to walk to C-1 or are we going to drag your motherfucking ass to C-1?" West was unable to move with Wright holding him to the floor with his knees in his back. West was not resisting or attempting to resist Wright.

11. Again, Sergeant Wright said, "Get up and walk!" West replied, "I can't walk. My leg has no feeling in it." When West made this statement, officers Tew and Cambell snatched West from the floor by his arms which were cuffed. One officer on the right and one on the left. The officers lifted West up by his arms until only his toes were touching the floor. From the look on his face and his moaning, West was in great pain as he was removed from the tier.

12. Captain Sconyers and all other named officers Logan, Peavey, Baldwin, Cambell and Tew personally observed Sergeant Wright inflict pain upon West by hitting him in the ribs with his knees and by his other knee on his neck forcing West's face into the concrete floor. Furthermore at no time which West was being beaten inside cell #37 did Captain Sconyers or any other officer intervene to stop the beating of West.

13. Approximately one hour later officers Baldwin and Cambell brought Bobby Miles back to cell #37. Miles was assigned to the cell with West He was removed from cell #37 before West was extracted from cell #37 Baldwin and Cambell told Miles to pack West's property in one of his bedsheets.

14. While Miles was packing West's personal property, Baldwin and Cambell were making jokes in response to conversations with other inmates assigned to segregation. Officer Cambell made the statement that, "It don't take much to bust one of y'all up with a shield. You usually piss all over yourself. What you really don't want us to use is the belts." On January 18, 2008, Officer Cambell was also wearing the electronic belt. Both officers laughed after the last statement.

15. I received word that West was left in H.C.U. (Health Care Unit). I did not see West again until Tuesday, January 22, 2008. West was brought to the Seg unit to shower. When West entered the doorway to the tier, he pulled his jumpsuit off to get into the shower. West handed the jumpsuit to officer Fayson. West stepped down about halfway of the tier wearing only his boxer shorts. He spoke and waved to the guys in the cells.

16. From the small plexiglass window of my assigned cell, I could see West. While West was facing toward me, I could see bruises on his left and right earlobes. Both of his knees had scabs covering what appeared to be lacerations.

17. When West turned his back, I could see a large bruise in the back area of his left rib cage. The bruise extended to his left hip. His left and right arms were bruised from the wrists to the bend of his arms (elbows).

5

18. On January 18, 2008 between the hours of 12:00-1300, all inmates were locked securely in their cells. No inmates were outside the cells prior to, or during the time West was forcefully removed from the cell. No other inmates offered to support West or created discipline problems in any way. Further Affiant sayeth not.

_Stephen Morgan_  #136096
Affiant


State of Alabama
Barbour County

Sworn to and witnessed under my hand and seal this the ___11___ day of ___April___, 2008.

_____
Notary

My commission expires___6-7-2010___.

6

In The United States District Court
For The Middle District Of Alabama
Northern Division

James R. West, Jr.,

Plaintiff,

V.

Captain Sawyers, et al.,

Defendants.

2:08-CV-82-MEF

## Affidavit

Before Me the undersigned authority a Notary Public in and for said County and State of Alabama at large personally appeared before me James R. West, Jr. who is known to me and being first duly sworn states on oath as follows.

My name is James R. West, Jr.. I am over the age of twenty-one. The statements below are made on my personal knowledge. All statements are true, accurate and complete. I am competent to testify.

Any action taken as it relates to James R. West, Jr. was not within the scope of authority of all named defendants Sawyers, Logan, Peavy, Wright, Lewis, Campbell and Baldwin and was not undertaken pursuant to the performance of his official duties.

Physical force was not used in an effort to restore order and discipline within the segregation unit, but instead was done maliciously and sadistically for the purpose of inflicting pain and causing physical and mental injury to West.

On 1/18/08 I refused to comply with the command to be handcuffed by placing my hands through the food tray opening in the cell door. Because I did not comply with the command to be handcuffed, Captain Sawyers authorized the above named officers to perform a cell extraction. All of the above named defendants participated in the cell extraction.

Officer Campbell entered the cell first armed with an Electronic Restraid device (ERD) stun shield. I was standing near the rear wall of the cell. Campbell had the stun shield positioned in front of him. He ran head on into me with the stun shield. I was forced against the wall by the shield. Campbell shocked me with the shield. and I was immobilized. My body went limp. I was immobilized to the extent I lost all muscular control. I urinated on myself because of the shock. Campbell continued to hold me against the wall with the stun shield. I was unable to speak and ask him to stop the shock.

I felt a heavy blow to my lower back in area of my kidneys. I yelled out from the pain caused by the blow. I was unable to move because of the leg irons and handcuffs. I attempted to raise my head. One of the officers placed his hand, knee or foot on the back of my neck. I heard one of the officers yell out, "Get up and walk! If you don't walk, I'll drag your motherfucking ass."

I replied, "I can't walk. My left leg has no feeling in it." Immediately, after I said I couldn't walk, two officers, one in each arm, snatched me to my feet from the floor. The officers used my wrists where the handcuffs were locked into my arms to lift me off the floor.

Due to the manner in which the officers grasped my handcuffed wrists, the full weight of my body was shifted to my left and right shoulder joints. I yelled out from the excrubating pain, especially in my right shoulder joint.

The two officers lifted me up to where only my toes were touching the floor. The pain in my right shoulder was so intense, I repeatedly asked the officers to stop pushing up on my arms.

All force applied by all named officers was done after I had been immobilized from the shock of the stun shield or after I had been placed in handcuffs and leg irons.

I am sixty two (62) years of age. Prior to the incident on 1/18/08 I suffered from advanced stages of arthritis in my lower back, shoulders, hands and my right knee. The force applied by the officers was applied to these areas of my body most vulnerable and sensitive to pain.

All officers were well aware of my advanced age and the fact that I suffered certain disabilities because of my age-no heavy lifting, bottom bed profile because of the condition of my back due, in part, to arthritis.

Because of the force applied by the officers, collectively and individually, I was hospitalized for five (5) days and four (4) nights. During that five (5) days, I was unable to walk without assistance, I was unable to eat for five (5) days, I could not urinate and I suffered excruciating pain in my left rib cage and lower back. Even as of this date my left rib cage causes me pain when I move, my kidneys do not function as before the beating and my right shoulder joint causes me more pain than ever. There are days the shoulder aches, my arm, hand and fingers swell and I am unable to perform such simple tasks as writing.

3

Seven (7) officers entered Cell #34 on 1/18/08. Those seven (7) officers, acting individually and collectively, caused me to suffer infliction of pain by using excessive force after I had been incapacitated from the shock of the stun shield. After I was shocked with the stun shield, I was physically unable to offer any resistance to any command given to me.
Further affiant sayeth not.

_____
                    Affiant

State of Alabama
Limestone County

Sworn to an witnessed under my hand and seal this
the 22 day of May                    2008.

_____
                                    Notary

My Commission expires ___ My Commission Expires
                          January 10, 2012 _____.

4

Exhibit -3

In The United States District Court
For the Middle District by Alabama
Northern Division

James B. West, Jr.,

        Plaintiff,

      V.              2:08-CV-82-MEF

Captain Sconyers, et al.,

        Defendants.

## Affidavit

Before Me the undersigned authority a Notary Public
in and for said County and State of Alabama at Large
personally appeared before me James B. West who being known
by me and being first duly sworn, says on oath as follows.

My name is James B. West. I am over the age of twenty-
one. All statements made herein are made in my personal
knowledge and are true, correct and complete. I am competent
to testify.

Any action taken as it relates to James B. West was not
within the scope of authority of Captain Sconyers and was not
undertaken pursuant to the performance of his official duties.

Physical force was not used in an effort to restore order
and discipline within the segregation unit, but instead was
done maliciously and sadistically for the purpose of inflicting
pain and causing physical and mental injury to West.

I was incapacitated by the stun shield by officer Campbell.
Officer Campbell entered the cell first, shocked me and him and
other officers threw me face down in the bunk inside the
cell.

Captain Sconyers placed his hands on the back of my head
and was forcing my face into the mattress. I was unable to
breathe because of Captain Sconyers forcing my face into the
mattress. The blows delivered by Sergeant Logan knocked my
breath out of my lungs and I was smothering, gasping for air.

Captain Sawyers acted in concert with Logan, Peavy, Wright, Lee's, Campbell and Baldwin by holding my head from the back forcing my face into the mattress with such force that I was unable to breathe. Captain Sawyers, by his action, beat, or caused me to be beaten.

Because of Captain Sawyers's action is assisting Logan, Peavy, Wright, Lee, Campbell and Baldwin to keep me pinned face down in the bed, I was unable to move my arms or hands while had been trapped underneath me when I was pinned to the bed by officer Campbell. All use of force by Sawyers and the other officers occurred while I was lying face down in the bed unable to move because of the shock from the stun shield. Further affiant sayeth not.

_____
                Affiant

State of Alabama
Limestone County

Sworn to and witnessed under my hand and seal this the
_____ day of _____May_____ 20_08_.

_____
My Commission Expires        Notary
January 10, 2012

My Commission expires _____.

2

In The United States District Court
For The Middle District Of Alabama
Northern Division

James R. West, Jr.,
    Plaintiff,

    V.                                    2:08-CV-82-MEF

Captain Sconyers, et al.,
    Defendants.

## Affidavit

Before Me the undersigned authority a Notary Public in and for said County and State of Alabama at Large personally appeared before me James R. West who being known by me and being first duly sworn says on oath as follows.

My name is James R. West. I am over the age of twenty-one. All statements made herein are true, accurate and complete and are made on my personal knowledge. I am competent to testify.

Any action taken as it relates to James R. West was not within the scope of authority of Sergeant Logan and was not undertaken pursuant to the performance of his official duties.

Physical force applied by Sergeant Logan was not used in an effort to restore order and discipline within the segregation unit but was done maliciously and sadistically for the purpose of inflicting pain and causing physical and mental injury to West.

I was incapacitated by the stun shield by Officer Campbell. All blows delivered by Sergeant Logan were inflicted after Officer Campbell had shocked me and I was laying face down on the bunk in a prone position with my hands and arms trapped beneath my body.

Because of the shocks from the stun shield, I was unable to exercise any muscular control. My body went limp from the shock of the shield. Captain Sconyers and officer Law held the back of my head forcing my face into the mattress and I was unable to breathe or move my arms from underneath my body.

Sergeant Logan acted in concert with Sawyers, Peavy, Wright, Law, Campbell and Baldwin to beat, or cause me to beaten, in the lower part of my back, left and right side of my head and knees by striking me 8 to 10 times in the lower part of my back with his closed fist and with such force that I lapsed into a state of semi consciousness due to my inability to breathe accompanied by excruciating pain.

With the assistance of the other officers, Sawyers, Peavy, Wright, Law, Campbell and Baldwin, by keeping me pinned down on the bed with my hands and arms trapped beneath my body, I was unable to move my hands or arms to offer any resistance to Logan's use of force.

All force used by Logan was accomplished by active participation on behalf of all named officers. All force by Logan and other officers was used after I had been shocked with the stun shield, as a result of Logan's use of force, I was hospitalized for five days and four nights. Further Affiant sayeth not.

_____
Affiant

State of Alabama
Limestone County

Sworn to and witnessed under my hand and seal this the 27 day of May 2008.

_____
Notary

My Commission Expires
January 10, 2012

My Commission expires _____.

2

Exhibit-5

In The United States District Court
For The Middle District Of Alabama
Northern Division

James R. West, Jr.,
    Plaintiff,

V.

Captain Sawyers, et al.,
    Defendants.

2:08-CV-82-MEF

## Affidavit

    Before Me the undersigned authority a Notary Public in and for said County and State Of Alabama at large personally appeared before me James R. West who being known by me and being first duly sworn says on oath as follows.

    My name is James R. West. I am over the age of twenty-one. All statements made herein are true, accurate and complete and made on my personal knowledge. I am competent to testify.

    Any action taken as it relates to James R. West was not within the scope of authority of Sergeant Peavy and was not undertaken pursuant to the performance of his official duties.

    Physical force was not used in an effort to restore order and discipline within the segregation unit, but instead was done maliciously and sadistically for the purpose of inflicting pain and causing physical and mental injury to West.

    Sergeant Peavy acted in concert with Sawyers, Logan, Wright, Few, Campbell and Baldwin to beat, or cause me to be beaten in the lower part of my back, left and right side of my head and knees by holding me by my leg and beating me on my knees with his fist or leg irons. He was holding and beating on my knee while I was lying face down on the bed with my hands and arms trapped beneath my body and while other named officers were holding the back of my head forcing my face into the mattress causing me to suffocate from the lack of oxygen because I could not breathe. All force applied by officer Peavy was done after I had been incapacitated from the shock of the stun shield by officer Campbell.

Sergeant Peavy used excessive force in placing leg irons on me by hitting me in my kneecaps with his hands or some object causing bruising and cuts in my left and right kneecaps.

All force used by Peavy was done after I had been shocked with the stun shield, lying on the bed face down with four other officers holding me on the bed. The blows to my kneecaps and Peavy's twisting of my left leg, left me unable to walk on my left leg for three days. Further Affiant sayeth not.

_____
James R. West Jr.
Affiant

State of Alabama
Limestone County

Sworn to and witnessed under my hand and seal this 27 day of May 20 08.

_____
Notary

My Commission Expires
January 10, 2012

My commission expires _____.

2

In The United States District Court
For The Middle District Of Alabama
Northern Division

James R. West, Jr.,
          Plaintiff,

          V.                                    2:08-CV-82-MEF

Captain Stougers, et al.,
          Defendants.

## Affidavit

Before Me the undersigned authority a Notary Public
in and for said County and State of Alabama at Large
personally appeared before me James R. West who being known
by me and being first duly sworn, says on oath as follows.

My name is James R. West. I am over the age of twenty-
one. All statements made herein are true, accurate and complete
and are made on my personal knowledge. I am competent to
testify.

Any action taken, as it relates to James R. West was not
within the scope of authority of Sergeant Wright and was not
undertaken pursuant to the performance of his official duties.

Physical force applied by Sergeant Wright was not used
in an effort to restore order and discipline within the segregation
unit but was done maliciously and sadistically for the purpose
of inflicting pain and causing physical and mental injury to West.

All force applied by Sergeant Wright was applied after
I had been rendered helpless from the shock of the stun
shield. And, the force used by Wright by dropping me face
down on the concrete floor and using his knee to strike me
in the left lower side cage and kidneys was done while I
was in full restraints, leg irons and handcuffed behind
my back.

Sergeant Wright acted in concert with Sangers, Logan, Peavy, Few, Campbell and Baldwin to beat, or cause me to be beaten in the area of my lower back, left and right side of my head and my knees while I was held face down in the bed with my arms and hands pinned beneath my body after I had been shocked with the stun shield.

Sergeant Wright, with the assistance of Officer Few and other Officers, drug me from the bed to the center of the tier after I had been placed in full body restraints, leg irons and handcuffs, behind my back. Wright dropped me face first into the concrete floor and using his knee dropped his full body weight in the area of my left lower back. He placed his other knee in the back of my neck. Further affiant sayeth not.

_____
Affiant

State of Alabama
Limestone County

Sworn to and witnessed under my hand and seal this the 22 day of _____May_____ 20 08.

_____
Notary

My commission expires _____

My Commission Expires
January 10, 2012

2

In The United States District Court
For The Middle District of Alabama
Northern Division

James R. West, Jr.,
        Plaintiff,

V.                                              2:08-CV-82-MEF

Captain Sconyers, et al.,
        Defendants.

## Affidavit

Before Me the undersigned authority a Notary Public
in and for said County and State of Alabama at large
personally appeared before me James R. West who being known
by me and being first duly sworn says on oath as follows.

My name is James R. West. I am over the age of twenty-
one. All statements made herein are true, accurate and complete
and are made on my personal knowledge. I am competent to testify.

Any action taken as it relates to James R. West was not
within the scope of authority of officer Matthew Campbell and was
not undertaken pursuant to the performance of his official duties

Physical force was not used in an effort to restore order
and discipline within the segregation unit, but instead was done
maliciously and sadistically for the purpose of inflicting pain and
causing physical and mental injury to West.

Officer Campbell acted in concert with Sconyers, Logan,
Peavy, Wright, Few and Bobbala to beat, or cause me to be beaten,
by assisting all named officers to beat me in the lower part
of my back, left and right side of my head and knees.
He assisted all named officers by shocking me with the stun
shield, throwing, shoving, pinning me against the wall and
throwing me face down on the bed after I was incapacitated
from the shock of the stun shield.

Officer Campbell entered Cell #34 with the electronic restraint device (ERD) stun shield. He was holding the shield in front of him. The shield is designed in a rounded shape and is large enough to prevent any access to the body of the person using the shield.

Campbell used the stun shield to run head on into me. When the shield made contact with my body, hands up in front of me, I was shocked and my body went limp. I had no muscular control over any part of my body. I even lost control of my kidneys and urinated on myself. It was unable to speak because of the shock. Officer Campbell held the stun shield against me and kept me pinned against the rear wall of the cell. I was trying to speak and ask him to stop the shock. After a brief period, he used the shield to shove me toward the bed. I fell face down on the bed with my hands and arms underneath my body. I was unable to move.

After I had been thrown to the bed, all of the other named officers entered the cell. They grabbed my legs, head and all I could fell was my left foot being twisted and a sharp pain ran up my leg to my left hip. Someone was beating me on my knee caps, right and left side of my head and in the lower part of my back while forcing my face into the mattress. I lost consciousness from the pain of the blows and lack of oxygen. During the entire incident, I was unable to move my hands, arms or legs. Further affiant sayeth not.

_____
Affiant

State of Alabama
Limestone County

    Sworn to and witnessed under my hand and seal this the 22 day of May 20 08.

_____
Notary

My Commission Expires
January 10, 2012

My commission expires _____

2

Exhibit-8

In The United States District Court
For The Middle District Of Alabama
Northern Division

James R. West, Jr.,
        Plaintiff,

        V.                              2:08-CV-82-MEF

Captain Sconyers, et al.,
        Defendants.

## Affidavit

Before Me the undersigned authority a Notary Public in and for said County and State of Alabama at Large personally appeared before me James R. West who being known by me and being first duly sworn says on oath as follows.

My name is James R. West. I am over the age of twenty-one. All statements made herein are true, accurate and complete and made on my personal knowledge. I am competent to testify.

Any action taken as it relates to James R. West was not within the scope of authority of officer Joel Few and was not undertaken the scope the performance of his official duties.

Physical force was not used in an effort to restore order and discipline within the segregation unit, but instead was done maliciously and sadistically for the purpose of inflicting pain and causing physical and mental injury to West.

Officer Few acted in concert with Sconyers, Logan, Peavy, Wright, Campbell and Baldwin to seat, or cause me to be seated in the lower part of my back, left and right side of my head and knees by holding the back of my head forcing my face into the mattress with my hands and arms trapped beneath my body, causing me to suffer loss of breathing to the point I lapsed into a state of semi consciousness. All force applied by officer Few was done after I had been incapacitated from the shock of the stun shield by officer Campbell.

Officer Few used force to strike me on the side of my head and to throw me to the floor from the bed to remove me from cell #37. He assisted Wright in dragging me from the cell to the center of the tier where I was dropped face first into the concrete floor.

The force used to drag me from the cell to the center of the tier occurred after I had been shocked with the stun shield and placed in full body restraints, leg irons and handcuffs behind my back.

Because of the shock from the stun shield and the manner in which I was placed in full body restraints, I was unable to resist or obey any command to move my hands or feet. Further Affiant sayeth not.

_James R. Wade, Jr._
Affiant

State of Alabama
Limestone County

Sworn to and witnessed under my hand and seal this the 22 day of May 20 05.

_____
Notary

My Commission Expires
January 10, 2012

My Commission expires _____.

2

In the United States District Court
For the Middle District Of Alabama
Northern Division

James R. West, Jr.,
      Plaintiff;

    V.                     2:08-CV-82-MEF

Captain Sconyers, et al.,
      Defendants.

## Affidavit

Before Me the undersigned authority a Notary Public in and for said County and State of Alabama at large personally appeared before me James R. West who being known by me and being first duly sworn says on oath as follows.

My name is James R. West. I am over the age of twenty-one. All statements made herein are true, accurate and complete and made on personal knowledge. I am competent to testify.

Any action taken as it relates to James R. West was not within the scope of authority of officer Dexter Baldwin and was not undertaken pursuant to the performance of his official duties.

Physical force was not used in an effort to restore order and discipline within the segregation unit, but instead was done maliciously and sadistically for the purpose of inflicting pain and causing physical and mental injury to West.

Officer Baldwin acted in concert with Sconyers, Logan, Pervy, Wright, Few and Campbell to beat, or caused me to be beaten in the lower part of my back, left and right sides of my head and knees by holding my leg while I was lying face down on the bed with my hands and arms trapped beneath my body while other named officers were holding me by the by the back of my head forcing my face into the mattress causing me to suffocate from lack of oxygen. I lapsed into a state of semi consciousness because I could not breathe and from the pain caused by the blows to my kidneys and head. All force applied by officer Baldwin was done after I had been incapacitated from the shock of the stun shield by officer Campbell.

Officer Baldwin assisted Peavy in holding my legs and placing leg irons on me. During the time Baldwin was holding my leg, he assisted in beating me on my left and right kneecaps which resulted in cuts and bruises on my left and right kneecaps.

All force used by Baldwin to cause the pain and injuries to my left and right kneecaps and left hip joint was done after I had been shocked with the stun shield and being held face down on the bed in a prone position. Because of the injuries and pain inflicted on my left and right kneecaps, I was unable to walk on my left leg for three days. Further Affiant sayeth not.

_James F. Webb Jr._
Affiant

State of Alabama
Limestone County

Sworn to and witnessed under my hand and seal this the 27 day of May 2008.

_Phil Van Alga_
Notary

My Commission expires _____.

**My Commission Expires
January 10, 2012**