IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JAMES R. WEST, #110 315                *

      Plaintiff,                        *

      v.                                *         2:08-CV-82-MEF
                                 (WO)
CAPTAIN SCONYERS, *et al*.,            *

      Defendants.                       *

_____


**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, James West ["West"], an inmate incarcerated at the Limestone Correctional Facility in Harvest, Alabama, alleges that while incarcerated at the Easterling Correctional Facility ["Easterling"] in Clio, Alabama, the named defendants violated his Eighth Amendment rights. Specifically, West alleges that the defendant correctional officers   subjected him to excessive force.[1]    Named as defendants are Correctional Officers Kenneth Sconyers, Shawn Logan, Gerald Wright, Matthew Campbell, Joel Tew, Larry Peavey, and Dexter Baldwin. West seeks compensatory and punitive damages, and any and all equitable relief to which he is legally entitled. West demands trial

---

[1] The court notes that West also alleged in his complaint a failure to protect claim against Defendant Sconyers.   Upon review of Plaintiff's opposition to Defendants' dispositive motion, however, West abandoned his failure to protect claim against Defendant Sconyers and, instead, claims that this defendant, along with the other six named defendants, participated in the alleged use of excessive force. (*See Doc. No. 35*.) Accordingly, this case is proceeding against the named defendants solely on West's allegation that they all subjected him to excessive force in violation of the Eighth Amendment. *See* Doc. No. 32 (. . .**"If Plaintiff fails to respond to the written report with respect to each of the claims raised in his complaint, the court will treat this failure as an abandonment of these claims and shall proceed as justice requires.**")

by jury.

In accordance with the orders of the court, Defendants filed an answer, a special report, a supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint. In these documents, Defendants argue that they are entitled to summary judgment on West's allegations of excessive force and failure to protect. The court provided West an opportunity to file a response to the arguments presented by Defendants.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat Defendants' special report as a motion for summary judgment The court informed West that Defendants' special report, as supplemented, may, at any time, be treated as a motion for summary judgment, and the court explained to West the proper manner in which to respond to a motion for summary judgment. (*See Doc. No. 32*.) West filed a response to the special reports filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, West's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that Defendants' motion for summary judgment on Plaintiff's excessive force claim is due to be denied.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants have met their evidentiary burden.  Thus, the burden shifts to West to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motion for summary judgment, West is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d

1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat

summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, West's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In the

6

present cause of action, West has demonstrated a genuine issue of material fact in order to preclude entry of summary judgment on his § 1983 claim for excessive force against Defendants.

## II. DISCUSSION

*A. Injunctive/Declaratory Relief*

West is no longer incarcerated at Easterling. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that West is no longer incarcerated at Easterling, his requests for injunctive and/or declaratory relief have been rendered moot.

*B. The Complaint*[3]

The incident giving rise to this lawsuit occurred on January 18, 2008 while West was an inmate at Easterling. He was housed in administrative segregation at the time. Around noon, Defendant Logan directed West to back up to the cell door, put his hands together, and place his hands through the food slot so that the guard could handcuff him and remove him

---

[3]At this stage of the proceedings, the court takes the facts alleged by West in his complaint as true and construes them in the light most favorable to him. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,' ... and 'resolve all reasonable doubts about the facts in favor of the non-movant.' ... Moreover, the court must avoid weighing conflicting evidence or making credibility determinations....").

from the cell. West does not dispute that he refused Defendant Logan's order to be handcuffed. Defendant Logan left West's cell and subsequently returned with Defendant Sconyers. West confirmed to Defendant Sconyers that he would not comply with the order to approach his cell door and allow himself to be handcuffed through the food slot. As a result of his steadfast refusal to comply with the guards' orders, an extraction team was assembled. Defendants Logan, Peavey, Wright, Campbell, Tew, and Baldwin made up the extraction team. (*Doc. No. 1.*)

Defendant Campbell was the first officer to enter West's cell. With his electronic stun shield, Defendant Campbell ran into West who was standing near the back of his cell. West's head was knocked into the metal bars of the cell window behind him. Defendant Campbell along with the other extraction team members then grabbed West and threw him on his bunk. From that point, West describes the extraction teams' conduct as follows:

> One of the officers grabbed my legs and placed shackles on very tightly. Officer Campbell grabbed my left arm and pulled it up above my head. Another officer grabbed my right arm. . . . Officer Campbell was hitting me with his fists on the left side of my head and earlobe. The officer holding my right arm was beating me on the right side of my head and earlobe. Another officer was punching me in my left rib cage and kidneys with his closed fist. I lost consciousness because of the severe pain from the repeated punches to my left rib cage and kidneys. I . . . remember counting 8 punches before I lost consciousness.

(*Doc. No. 1 at pg. 5.*)

West contends that he was incapacitated as a result of being shocked with the stun shield before the extraction team started administering blows to his head, rib cage, and kidneys.

(*Doc. No. 1.*)

After Defendants placed West in restraints, he claims he was dragged out of his cell to the middle of the cell block. Defendants Tew and Campbell grabbed his arms and snatched him up from the floor as he was unable to stand on his own.  Defendants escorted West  to the infirmary for a body chart  where his condition on admission was noted as fair.  He made no comment when asked by medical personnel why a body chart was needed.   West subsequently complained of left hip pain, lower back pain on the right side, right shoulder pain, and an inability to urinate.   Upon examination, medical personnel observed the following injuries to West: bruising on his bilateral forearms, a skin tear with minimal bleeding on his right elbow, bruising to his upper chest area and upper right arm, superficial scratches to his left neck, an abrasion on his left anterior ear - left ear canal, an abrasion  to his fourth finger on the right hand, abrasions to both knees, and moderate swelling  to his lower back, left side. The affected areas were cleansed with neosporin, a band-aid was applied to West's right elbow area, and ice was applied to his left lower back area.  West was prescribed Motrin (800 mg.) and baclofen (20 mg.), and a urinalysis, chemistry, and CBC (complete blood count) panel were ordered. Medical personnel recommended that West be held in the infirmary for observation. West remained in the medical unit until January 22, 2008 for treatment and recovery of the  injuries he sustained during the January 18 incident. (*Doc. No. 26, Plaintiff's Medical Records, Doc. No. 31.*)

*C.  Official Capacity Claims*

With respect to claims lodged against Defendants in their official capacities, they are immune from monetary damages.   "[A] state official may not be sued in his official capacity

9

unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear to the court that Defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, Defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

*D.  Individual Capacity Claim*

*i.  Excessive Force*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  In *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), the Eleventh Circuit explained that whether a defendant's use of force is

10

excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience,' *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force " 'was applied ... maliciously and sadistically for the very purpose of causing harm.' " *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002).

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries.  *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  An excessive force claim "necessarily

11

excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327). *See also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim). Notwithstanding that a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show the application of force resulted in serious injury. *Hudson*, 503 U.S. at 8. Rather, the key inquiry under *Hudson* is whether the alleged conduct involved "unnecessary and wanton infliction of pain." *Id*. Thus, in analyzing West's allegation of excessive force, this court looks at three factors - the objective nature of the force used, the resulting harm, and the subjective intent of the officers. *See Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, __ L.Ed.2d ___ (2010); *Hudson*, 503 U.S. at 7. The *Wilkins* Court explained that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins*, 130 S.Ct. at 1178 (quoting *Hudson*, 503 U.S. at 7). Further, the *Wilkins* Court noted that requiring a showing of injury would permit any punishment, "no matter how diabolic or inhuman," absent some quantum of injury. *Id*. (quoting *Hudson*, 503 U.S. at 9). The Court did not want "[a]n inmate who is gratuitously beaten by guards . . . [to] lose his ability to pursue an excessive force

12

claim merely because he ha[d] the good fortune to escape without serious injury." *Wilkins*, at 1178-79.[4]

West argues that on January 18, 2008 Defendants used excessive force, not to restore order, but maliciously and sadistically for the purpose of inflicting injury and where he had ceased resisting Defendants' efforts to restrain him. Defendants deny the allegations made against them. Specifically, they assert the force utilized during the cell extraction did not rise to the level of excessive force in violation of West's constitutional rights. Defendants maintain that they used only that amount of force necessary to gain West's compliance with their numerous directives that he allow the guards to place him in restraints. According to Defendants, Captain Sconyers' attempts to negotiate a peaceful removal of West from his cell were unsuccessful as West continued to refuse directives that he allow himself to be handcuffed. Upon being advised by Defendant Sconyers that he would be physically removed from his cell if he did not comply on his own accord with the orders to be handcuffed, Defendants assert that West backed up to the rear of his cell, assumed a defensive posture, and stated he would fight anyone who entered his cell. After receiving Warden Boyd's approval to use an extraction team if necessary, Defendant Sconyers instructed Defendant Logan to have his segregation unit rovers dress in protective gear and prepare for a possible extraction. Because West ignored repeated commands that he comply with the orders to be handcuffed without any use of force, the extraction team entered

---

[4] The Court did note, however, that the absence of serious injury is not irrelevant. The extent of injury could indicate whether the use of force was thought to be necessary, and it could provide an indication of the amount of force actually applied. *See Wilkins*, 130 S.Ct. at 1178.

West's cell in order to handcuff and remove him therefrom. Defendants admit that a certain amount of force was used against West during the extraction but maintain that they only used that amount of force necessary to subdue his combativeness and place him in restraints. When Defendants succeeded in placing West in restraints, they maintain at that time West ceased his resistance and the officers' use of force stopped. (*Doc. No. 26, Exhs. 1-7.*)

West concedes in his response to Defendants' dispositive motion that some degree of force was lawful in light of his non-compliance with Defendants' orders that he allow himself to be handcuffed and removed him from his cell. West argues, however, that the stun shield was kept pressed against him which delivered a continuing shock despite his having gone limp from his initial contact with the shield.   According to West, after he was initially hit by the stun shield, he physically could offer no further resistance, and thus, Defendants' continued assault on him was administered maliciously and sadistically and for no other reason than to inflict pain. (*Doc. No. 35.*)

West has submitted the affidavit of inmate Stephen Morgan who was located in the cell adjacent to West's at the time of the incident in question. Inmate Morgan could not see inside West's cell but states he heard what sounded like West being hit by the stun shield, West falling to the floor, and West grunting and moaning. Inmate Morgan  heard a guard say "put him on the bed face down," after which he heard the sound of metal clicking which he asserts was the application of leg shackles and handcuffs. After that, inmate Morgan heard what sounded like flesh beating against flesh and West moaning.  Inmate Morgan  heard an officer say "[i]t looks like he's out of it; get him out of here."  Inmate Morgan observed

14

Defendant Wright drag West, who was in full restraints, from his cell into the middle of the tier and then drop him face first to the concrete floor. Inmate Morgan observed Defendant Wright drop one of his knees on West's lower rib cage and kidney area and the other knee on West's neck and heard the guard loudly asked West if he was going to walk to the health care unit or whether the officers would have to drag him.  Inmate Morgan heard West state he could not walk and that his legs had no feeling which prompted Defendants Tew and Campbell to pull West up from the floor and remove him from the tier. When West returned to the segregation block on January 22, 2008, inmate Morgan states that he saw bruises on West's earlobes, scabs on his knees,  a large bruise around his left rib cage extending to his left hip, and bruises on his right and left arms from the wrist to elbow area. (*Doc. No. 35, Morgan Affidavit.*)

West is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail.   Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike.  Nevertheless, although West concedes that he did not comply with the initial orders to be handcuffed, he maintains that after Defendant Campbell ran into him and  shocked him with the stun shield, he no longer posed a threat to Defendants because he was unable to exercise any muscle control.  Upon being thrown onto his bunk, West contends that Defendants forced his head face down into his mattress and his arms were pinned underneath him. In this position, West claims he was also unable to breathe or move his head or arms, and thus, was unable to comply with the

15

orders that he submit to being handcuffed and shackled. In his face down position on the bunk, West asserts that Defendants, individually and collectively, repeatedly beat him about his head, ribs, back, and knees despite his inability to offer resistance to the guard's actions. West, therefore, argues that Defendants' continued use of force under these circumstances was unconstitutionally excessive. West maintains that the medical records submitted in this case support his claim that he "was the victim of a significant amount of force." (*Doc. No. 35; see also Doc. No. 26, Exh. 8; Doc. No. 31, Supplemental Exh. 1.*)

Defendants argue they are entitled to qualified immunity on West's claims of excessive force and failure to protect. The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301, citing *Hudson*, 503 U.S. 1, and *Whitley*, 475 U.S. 312. Thus, a qualified immunity defense is not available when a plaintiff asserts the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment, unless the force used was *de minimis*. *Id.* at 1302; *see also Hudson,* 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether West's allegations that Defendants maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

Viewing the complaint in the light most favorable to West, the court concludes he has

16

set forth facts which demonstrate a violation of his constitutional rights. "Having established a constitutional violation, the next step in the qualified immunity analysis usually is to determine whether the right was clearly established. *See Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  However, we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)." *Danley*, 540 F.3d at 1310.  Under the facts presented by West, disputed issues of material fact exist regarding the need for the use of force after West was initially hit with the electric stun shield and whether the amount of force used from that point onward was appropriate, reasonable, and/or necessary.  Thus, Defendants are not entitled to qualified immunity, *Id*.; *Skrtich*, 280 F.3d at 1301, and their request for summary judgment with respect to West's excessive force claim is due to be denied.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment on Plaintiff's excessive force claim (*Doc. Nos. 26, 31*) be DENIED;

2.  Plaintiff's § 1983 excessive force claim be SET for trial by jury.

It is further

ORDERED that on or before **November 17, 2010** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 3rd day of November 2010.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

18